IN

# THE SUPREME COURT

OF

# THE STATE OF LOUISIANA.

---

**WESTERN DISTRICT.**
OPELOUSAS, 1835.

---

OFFUTT ET AL. *vs.* HENDSLEY ET AL.[*]

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL DISTRICT, THE JUDGE
OF THE DISTRICT PRESIDING.

Gold and silver only can be legally tendered in payment of debts. So, a twelve months' bond, taken for the price of the adjudication of property of a debtor, seized and sold by a creditor, is nothing more than a bond and security with mortgage on the property sold, and which does not discharge the original obligation or judgment.

WESTERN DIST.
1835.

OFFUTT ET AL.
*vs.*
HENDSLEY ET AL.

A judicial sale made to effect the payment of mortgage debts, has also the effect of transferring the thing sold, free and unincumbered of the mortgage previously existing on it, even when sold for a less sum than that for which it was mortgaged.

When mortgaged property passes by a judicial sale into other hands than those of the judgment debtor and mortgagor, the mortgage attaches to the *price*, and the purchaser takes the property free and unincumbered.

---

[*] The present case was decided by Judges Martin and Bullard, during the recess, and sent to the clerk. The regular term of this court, in September, 183 , failed in consequence of the sickness of the Judges.

1

WESTERN DIST.
1835.

OFFUTT ET AL.
vs.
HENDSLEY ET AL.

But where a slave is seized and sold by a judgment creditor, and purchased in by the debtor, on his twelve months' bond, it becomes immediately affected by the general mortgage resulting from the judgment, as well as by the special mortgage given in the twelve months' bond to the sheriff.

So, where a debtor buys in his own property on a twelve months' bond, it is not released from the original mortgage resulting from the judgment under which it was sold.

There is a privity of contract between the surety of a debtor and the creditor which compels the latter to preserve his rights for the former.

A subsequent mortgagor, the vendee of the original mortgagor having an interest, may discharge all anterior mortgages, and as a matter of right be subrogated to all the creditors' rights to the mortgaged property.

There is no privity of contract between a vendee of a mortgage and the creditor of the original mortgagor.

The original mortgagee creditor may indulge his debtor with a delay, or in any other manner to facilitate the payment of his debt, without violating the rights of a subsequent mortgagee between whom there is no privity of contract.

A mortgage creditor, having the vendor's privilege and mortgage with personal security, and an additional mortgage by a judgment and sale of the mortgaged property on a twelve months' bond, with security, may pursue either of his remedies: by seizure and sale of the property in the hands of a third possessor, or proceed against the sureties.

The privileges and mortgages of creditors to property sold at the probate sale of a succession attach to the price, and the purchaser takes the thing sold free of incumbrance, when these creditors were creditors of the deceased; but if not, then their mortgages follow the property into whose soever hands it may come.

The act of 1833, relative to injunctions, *disallows* the principle established by the Supreme Court, (5 *Louisiana Reports*, 87) "that a privity must exist between the party enjoining and the judgment enjoined," to entitle the party to damages.

To entitle a party to an increase of damages for the wrongful suing out an injunction, suit must be instituted on the bond.

This suit commenced by injunction to stay the proceedings under an order of seizure and sale, which the defendants obtained against a certain mortgaged slave named Randal,

in the possession of the plaintiffs in the injunction, to satisfy and pay the sum of seven hundred and fifty-four dollars, with interest, due on the original price of said slave. This slave was originally purchased at the probate sale of the succession of William Thompson, deceased, in December, 1819, by William Haslett for one thousand five hundred and ten dollars, on a credit, who gave William Moore and M. Collins as his sureties, the slave remaining mortgaged until payment. In 1822, the present defendants in the injunction, (Mrs. Hendsley and her children, widow and heirs of Thompson) obtained a judgment against Haslett and his sureties for the price of the slave, Randal, which was recorded in December, 1823, and operated as a general mortgage on the property of the parties to it, with the vendor's privilege on the slave. Execution issued in September, 1823, on the judgment, was levied on the slave, Randal, who was sold and bid in by Haslett, for one thousand two hundred and sixty dollars and fifty cents, on a twelve months' bond, with G. King as surety, the slave remaining specially mortgaged until payment of the bond.

In June, 1825, Haslett sold this slave to John Davis with all the previous mortgages and privileges on him, for one thousand two hundred dollars. Davis died in 1826, and the slave in question was sold at the probate sale of his succession, to Joseph Irwin. In 1832, Boardman bought Randal at the sale of Irwin's succession and sold him to the present plaintiffs in the injunction.

The plaintiffs allege that the order of seizure and sale obtained by the defendants was illegal. That neither the vendor's privilege and mortgage in virtue of the original sale to Haslett, nor the mortgage under the execution and twelve months' bond exist. The judgment on which the execution issued, retained no privilege or mortgage, and it being unappealed from must be considered as acquiesced in, and the privilege and mortgage waived or tacitly renounced. And even if the privilege and mortgage had been retained in the judgment, and existed afterwards, the sale under this judgment, on a twelve months' bond, extinguished and

satisfied the mortgages, &c. As to the mortgage reserved in the twelve months' bond, the latter not being recorded, the mortgage can have no effect. The defendants having neglected to proceed under the twelve months' bond, cannot now pursue their remedy and claim under the vendor's privilege and mortgage in virtue of the original sale, or under the judgment ; or if they yet retain said rights, they must first exhaust their remedy under the twelve months' bond, before coming on the mortgaged property.

The plaintiffs further allege, that after Haslett, the original purchaser of this slave, and who purchased him in under an execution against himself for the original price, and executed his twelve months' bond with two sureties, he became insolvent, the defendants attended a meeting of his creditors, and consented to a sale of the property surrendered without the consent of the sureties in the twelve months' bond, *on a credit,* and thereby discharged them, so that the petitioners, as purchasers of the slave seized, cannot be subrogated to defendants' rights against said sureties.

They further allege, that the defendants' remedy (if any) is by ordinary action and not by executory proceeding, as their first mortgage is gone and the second is not evidenced by an authentic act, the sheriff's deed expressing that the *price* for which the slave sold under the judgment against Haslett, was *received* by the twelve months' bond, with George King as security. They aver, that they and those under whom they claim have been in possession of said slave, Randal, more than five years, under a good and legal title ; they therefore plead the prescription of five years, and pray judgment in their favor, perpetuating the injunction and quieting them in their title and possession to the slave, &c.

The defendants in the injunction plead a general denial, admit the order of seizure and sale under which they seized the slave in controversy, and refer to their former suit, reported in 4 Louisiana Reports, for a detailed statement of their rights and claim against the slave, and adopt the allegations set out and made in that case by them as plaintiffs.

They claim the right to seize and sell the slave under their original mortgage, and demand the fruits of his hire from the service of the order of seizure and sale, which is enjoined. They pray for a dissolution of the injunction, and that they be permitted to proceed under the order of seizure and sale until the slave is sold and their demand satisfied, and that they have judgment for twenty per cent. in damages on the amount of the original judgment enjoined, including principal and interest.

Judgment was rendered in favor of the defendants, dissolving the injunction and allowing them to proceed to the sale of the slave seized in the executory proceedings, and also giving ten per cent. damages for the wrongful suing out of the injunction. The plaintiffs appealed.

On the appeal the defendants prayed to have the judgment amended, so as to allow them twenty per cent. damages and hire for the slave, from the notification of the order of seizure to the plaintiffs.

*Bowen*, for the plaintiffs, contended, that the defendants' original mortgage was lost, because in their suit against Haslett for the price they claimed it, but permitted judgment to be entered *without retaining or recognizing the mortgage*, which judgment is unappealed from ; and if it had been, it is a transaction which they have agreed to, and must take it with all its consequences.

2. When a thing (as a mortgage) is claimed in a suit, and the judgment is silent as to the claim set up, it is rejected and cannot be again claimed. The judgment is *res judicata*. 7 *Martin, N. S.*, 436 to 444, *and the authorities there cited.*

3. The judgment is founded on a transaction.

4. The sale of the slave, Randal, under the execution which issued on this judgment, which was rendered for the amount due on his original price, and to give effect to the original privilege and mortgage, discharged the property both from the original vendor's privilege and mortgage, and from *that* resulting from the recording the judgment, and the title

of the purchaser is unincumbered by either of those mortgages. 5 *Martin, N. S.*, 149 *and* 150. 2 *Ibid.* 234.

5. But it is objected and contended that the sale on twelve months' credit, and the twelve months' bond taken, does not discharge the judgment, and that the original debt and judgment still exists, with all their accessories, and the case of Williams *vs.* Brent, 7 *Martin, N. S.*, 217, is referred to in support of this position. The answer is, that admitting the debt with its accessories to subsist in full force, yet the *property* sold is discharged from it by the sale under the execution.

6. A mortgage is indivisible, and attaches, *en entière*, over and to all the property sold, and to each and every part of it. *Civil Code*, 453, *article* 3. *Louisiana Code, article* 3149.

7. The statute of January 28th, 1817, and the Code of Practice both require sheriffs when selling property on a credit, susceptible of mortgage, to take a special mortgage on it; which would be superfluous if the previous mortgage under which, and to satisfy which, it was sold, still existed. *Code of Practice*, 681.

8. When a seizing creditor has a privilege or mortgage payable by instalments, some of which are not due, he may demand that the property be sold for the whole debt, with the same credit for the instalments not due as was allowed in the contract. Why is this provision made, except that a sale under the first instalment would liberate the property from the subsequent ones? *Code of Practice*, 686.

9. In this case, the defendants having commenced proceedings against the original debtor and his surety, and the surety in the twelve months' bond, must exhaust their remedies against them, before attaching the property in the hands of *bonâ fide* third possessors. 7 *Martin, N. S.*, 222. *Louisiana Code*, 2157–8.

10. The defendants by *giving time* in the sale of Haslett's property surrendered to his creditors, without the consent of his sureties, have thereby discharged them, so that the plaintiffs cannot be subrogated to the rights of the defendants

as seizing creditors against said sureties. *Louisiana Code*, 3030, 2157–8.

11. No vendor's privilege can be claimed under the sheriff's deed to Haslett, who purchased the property subject to the original vendor's privilege in, and gave his twelve months' bond; and none is claimed in the suit enjoined.

12. The receipt of the price for which the property sold is acknowledged in the sheriff's return, by taking the twelve months' bond, with a surety, and consequently the debt is novated. A receipt of a note in payment novates a debt, but not simply taking a note. 2 *Martin, N. S.,* 144.

13. Another thing may be taken in payment if creditor and debtor agree. 7 *Toullier*, 66, *No.* 46, 33. 8 *Ibid.,* 422. 4 *Ibid.,* 11. 9 *Martin,* 562.

14. The sheriff is the agent of the creditor, and so acted in taking the twelve months' bond. 3 *Martin,* 468.

15. The sale of which the sheriff's deed is evidence, is not made by the judgment creditor, or by the owner of the property seized, but by the law; and in such a sale no vendor's privilege exists. *Civil Code,* 456, *article* 29. *Louisiana Code, article* 3216, *No.* 1, *articles* 2594, 2597.

16. The sheriff's deed was not duly recorded in the proper recording office, and no mortgage can result from it. The act of 1827, (2 *Moreau's Digest,* 305,) establishes an office of Recorder of Mortgages for the parish of St. Landry, where the deed should have been recorded. 6 *Merlin's Reports, verbo Inscription Hypothécaire,* 249, *section* 9. 3 *Quest. du Droit, section* 3, *page* 613, 616.

17. The defendants, as creditors, have no right to this property, either as owners or as standing in the place of its owner; the sale under execution is a part of their legal remedy to enforce payment of the original debt and judgment, as in case of the twelve months' bond. In this they have a mortgage and personal security—a remedy against the sheriff and his sureties, if the former fails; and a recourse on their original judgment, if the remedy fails on the twelve months' bond; but their original vendor's privilege and mortgage is extinguished and gone.

WESTERN DIST.    *Garland*, for the defendants.
1835.

OFFUTT ET AL.      1. The demand in this case, is based on a special mortgage
vs.
HENDSLEY ET AL.  reserved on the slave in question, in the original sale to
Haslett, at the probate sale of the succession of Thompson,
the ancestor of the defendants, in 1819.   This mortgage still
exists for the balance of the original price of said slave, which
is now claimed with interest, fruits or hire, and damages.

2. The defendants are entitled to their remedies under
the original mortgage and vendor's privilege in the sale to
Haslett, on this slave.   Neither of these rights are extinguished
by the judgment against Haslett in 1822, because not
expressly mentioned or retained in it.   A release of a mort-
gage is not presumed ; it must be express, by some act of the
party, or by consent of the parties to it.   *7 Martin, N. S.* 205.
*Louisiana Code,* 3335, 3341.

3. The sale under the execution which issued on the
judgment, did not extinguish or impair the original mortgage
or privilege, as the property was bid in by the debtor himself.
*7 Martin, N. S.* 205.   *4 Louisiana Reports,* 477.

4. Failing to record the twelve months' bond, did not impair
the special mortgage given by it, as the sheriff's deed was
recorded which recited the bond, and was full notice to third
parties.   See *Session Acts of* 1817, *verbo, Sales under execution.*

5. The defendants are not restricted in their remedy.
There is no law which requires them to proceed on the
twelve months' bond, if they choose to pursue the mortgaged
property under their mortgage.   *Civil Code of* 1808, *page*
458, *article* 31.   *Acts of* 1817, *page* 38, *section* 18.

6. It is urged that Haslett made a cession of his property,
and the defendants voted for a sale of his property on time,
which had the effect to release their mortgage.   This is
denied.   1. Because it is in fact no prolongation of the
term of payment.   2. If it was, it ascertained that Haslett's
estate was insolvent, and, was insufficient to pay debts
having an anterior and higher privilege.   3. The present
plaintiffs had no interest in the matter, and cannot now
contest it.

7. The plaintiffs cannot in any way be subrogated to the rights of the defendants, either against the sureties in the original purchase or the twelve months' bond. On the con-. trary, if the sureties had and should pay, they would be subrogated to all the defendants' rights against the plaintiffs, or the mortgaged slave in their possession. *Louisiana Code,* 3022, 2157. 1 *Louisiana Reports,* 401.

8. The defendants have two modes of proceeding; either in the ordinary way by suit, or by the executory process. They are the original mortgagees under an authentic act, and by a judgment and a twelve months' bond, and which import a confession of judgment. *Louisiana Code,* 3362, 3373. *Code of Practice,* 744, 733.

9. The plaintiffs cannot sustain the injunction, as it has not issued for any of the causes stated in the Code of Practice, or the statutory amendments.

10. The defendants are entitled to the fruits or hire of the slave Randal, which proved to be worth thirty dollars per month, from the notice of the order of seizure and sale, until he is given up. *Louisiana Code,* 3371.

11. We are entitled to have the injunction dissolved, with 20 per cent. damages, to be calculated on the principal and interest of the debt claimed, and not on the principal alone. See *Session Acts of* 1831, *page* 102, *section* 3. 3 *Louisiana Reports,* 219 ; 5 *Ibid.* 244.

*Martin J.* delivered the opinion of the court.

This suit commenced by an injunction to stay certain executory proceedings against a mortgaged slave in the possession of the plaintiffs in injunction. They are appellants from the judgment of the District Court, dissolving their injunction, staying the execution of the order of seizure and sale of the slave in question, and which the present defendants had obtained and were proceeding to execute. The latter, in their answer to the appeal, pray that the judgment appealed from, may be amended in their favor so as to allow them full damages for the detention and hire of the slave in question, which they have a right to claim.

2

WESTERN DIST.
1835.

OFFUTT ET AL.
vs.
HENDSLEY ET AL.

The facts, as exhibited in the record, so far as they are material to the case, are briefly as follow : the slave Randal, under seizure, made part of the estate of the late Wm. Thompson, deceased, former husband of the present widow Hendsley, and father of several of her minor children, all of whom are made defendants to the present injunction suit. At the probate sale of Thompson's succession, this slave was sold and purchased by Wm. Haslett, for the sum of one thousand five hundred and ten dollars ; and a mortgage retained to secure payment of the purchase money. Haslett failing to pay the price, judgment was obtained, upon which execution issued; the slave in question was seized and sold, and bid in by Haslett, the judgment debtor, for one thousand two hundred and sixty-two dollars, on a twelve months' bond. Haslett subsequently sold and conveyed Randal to one Davis, who died, and this same slave was again sold at the probate sale of his succession, and purchased by Irwin; and at the sale of Irwin's succession, was purchased by Boardman, who sold to N. Offutt & brother, the present plaintiffs in the injunction.

The widow Hendsley and her children, who are the surviving widow and heirs of Wm. Thompson, deceased, obtained an order of seizure and sale, grounded on the vendor's privilege and special mortgage arising out of the first sale of the slave at the probate sale of Thompson's succession ; and also, resulting from the sheriff's sale ; and on the general mortgage arising from the recording of the judgment against Haslett.

It is deemed sufficient to a proper decision of this case, to confine the inquiry and direct the attention of the court to the right of the seizing creditors on the general mortgage, which their counsel contends, still remains in force and unextinguished.

The different modes by which mortgages expire or are extinguished, are detailed in the 3374th article of the Louisiana Code. The fourth mode pointed out in that article, is the extinction of the obligation of which the mortgage is the accessory. In this case, in order that the sheriff's sale might be said to have extinguished the general mortgage

resulting from Hendsley's judgment against Haslett, duly recorded, it should be shown that the sale under it has operated the extinction of the obligation flowing from the judgment itself.

The manner in which obligations are extinguished, is also treated of and detailed in the 2126th article of the Louisiana Code. Payment is first mentioned, and is the mode by which the obligation in question can only be supposed to be extinguished, if at all.

As gold and silver only can be legally tendered in the payment of debts, it follows that a twelve months' bond, taken for the price of the adjudication of property seized and sold by a creditor, produces nothing more than a bond with security and a mortgage immediately on the property sold, and it cannot, therefore, have the immediate effect of discharging or extinguishing the original obligation.

It is, however, contended, that although the sale of the slave may not have the effect of extinguishing the general mortgage under which the seizure took place, it had that of disincumbering the thing sold from the general mortgage; this court having often held that a judicial sale made to effect the payment of mortgage debts, has also the effect of transferring the property or thing sold, free and unincumbered of the mortgage with which it was burdened, in the hands of the mortgage debtor; even, when it was sold for a price, which left part of the mortgage debt unpaid. This is certainly true when the property passes by a judicial sale into the hands of any other person except the mortgage debtor. In the hands of the purchaser, the purchase becomes instantly liable to all the judicial or legal mortgages with which all the rest of his property is burdened. So in the present case, when Haslett bought the slave the second time, it was immediately affected by the general mortgage resulting from the judgment, as well as by the special mortgage given in the twelve months' bond to the sheriff.

We, therefore, conclude this part of the case, by saying, that the sheriff's sale and twelve months' bond taken, did not

WESTERN DIST.
1835.

OFFUTT ET AL.
vs.
HENDSLEY ET AL.

Gold and silver only can be legally tendered in payment of debts. So, a twelve months' bond, taken for the price of the adjudication of property of a debtor, seized and sold by a creditor, is nothing more than a bond and security with mortgage on the property sold, and which does not discharge the original obligation or judgment.

A judicial sale made to effect the payment of mortgage debts, has also the effect of transferring the thing sold, free and unincumbered of the mortgage previously existing on it, even when sold for a less sum than that for which it was mortgaged.

When mortgaged property passes by a judicial sale into other hands, than those of the judgment debtor and mortgagor, the mortgage attaches to the *price*, and the purchaser takes the property free and unincumbered.

But where a slave is seized

WESTERN DIST.
1835.

OFFUTT ET AL.
vs.
HENDSLEY ET AL.

and sold by a judgment creditor and purchased in by the debtor, on his twelve months' bond, it becomes immediately affected by the general mortgage resulting from the judgment, as well as by the special mortgage given in the twelve months' bond to the sheriff.

So, where a debtor buys in his own property, on a twelve months' bond, it is not released from the original mortgage resulting from the judgment under which it was sold.

release, free or disincumber the slave Randal from the original mortgage resulting from the judgment.

It is further contended, that if this sale did not extinguish the general mortgage, nor disincumber the slave from its burden, it had at least the effect of suspending the exercise of the creditor's right, under the judgment, until he had exhausted all the means which the debtor had at the time of sale, in order to obtain payment; and that the vendee of the slave may resist the attempt to have the slave sold under the general mortgage, until all these means are fairly exhausted.

It is clear, Haslett, the vendor of the plaintiffs in the injunction, could not have stayed a sale on the special mortgage he gave to the sheriff in the twelve months' bond, but his vendee can. If the slave cannot be sold in the hands of the vendee, he cannot complain that this means of obtaining payment has not been exhausted.

It is urged in the next place, that the appellants, the plaintiffs in injunction as vendees of Haslett, have the right of paying his debt, and in doing so, to be subrogated to all the rights which the creditor had to compel payment from his sureties, &c.; that these rights have been impaired by an extension of credit to the principal debtor by the creditors consenting to the sale of the property surrendered by Haslett to all his creditors; and the neglect of the seizing creditors, to record the sheriff's sale, from which a special mortgage resulted.

This leads to an inquiry into the obligations of a creditor, (the subrogation of whose rights may be claimed) to preserve those rights unimpaired.

There is a privity of contract between the surety of a debtor and the creditor, which compels the latter to preserve his rights for the former.

It being of the nature of the contract of suretyship, that the surety who pays, whether willing or compulsively, has a right to demand the subrogation of all the creditor's rights on his debtor, his property and his sureties. This right of subrogation is the consideration (or part of it) of the obligation which the surety contracts. There is a privity of contract between the surety and creditor, which compels the latter to preserve his rights for the former. If the preservation of

these rights be not burdensome to the creditor, they put an end to all trouble when the day of payment arrives, by insisting on payment from the surety. No one can become surety against the creditors will, though he may against that of the debtor. The assent of the creditor is of the essence of suretyship; and no one can complain of the natural consequences of any contract into which he may enter.

A subsequent mortgagor, the vendee of a mortgagor, having an interest to discharge anterior mortgages, has the right of doing so; and in availing himself of this right to claim a subrogation of all the mortgage creditor's rights whatever, to the mortgaged property. But between these two, there is no privity of contract; they are mere volunteers; he becomes, a posterior mortgagor or vendee of the mortgagor, without the assent or knowledge of the creditor, and may have done so against his will. He is under no obligation to pay the creditor, and when he does pay, he must be satisfied with a subrogation to these rights as they exist.

By indulging his debtor with a delay, or in any other manner, the creditor may facilitate the payment of his debt. We cannot see that the law forbids him to do so; and to obtain some advantage for the interest of others between whom and him there is no privity of contract, and who do not incur any obligation. We cannot see how the rights of a mortgagee may be affected or put in duriori casu, by the circumstance of there being a second mortgagor, or the sale of the mortgaged premises; though the latter may make some difference in practice, when the mortgagor seeks to exercise his right of mortgage.

What has just been said, applies with equal force to the objection which has been taken, that the seizing creditor did not effectually pursue Haslett's sureties in the original purchase, and at the sheriff's sale.

Davis, one of the intermediate vendees between Haslett and the present plaintiffs in injunction died, and at the probate sale of his succession this same slave was sold, and purchased by Irwin. It is contended that the slave passed to the purchaser at this sale, free and unincumbered as to all anterior

WESTERN DIST.
1835.

OFFUTT ET AL.
vs.
HENDSLEY ET AL.

A subsequent mortgagor, the vendee of the original mortgagor, having an interest, may discharge all anterior mortgages, and as a matter of right, be subrogated to all the creditor's rights to the mortgaged property.

There is no privity of contract between a vendee of a mortgage and the creditor of the original mortgagor.

The original mortgagee creditor may indulge his debtor with a delay, or in any other manner to facilitate the payment of his debt, without violating the rights of a subsequent mortgagee, between whom there is no privity of contract.

A mortgage creditor having the vendor's privilege, and mortgage with personal security, and an additional mortgage by a judgment and sale of the mortgage property on a twelve months' bond, with security, may pursue either of his remedies, by seizure and sale of the property in

WESTERN DIST.
1835.

OFFUTT ET AL.
*vs:*
HENDSLEY ET AL.

the hands of a third possessor, or proceed against the sureties.

The privileges and mortgages of creditors to property sold at the probate sale of a succession, attach to the price, and the purchaser takes the thing sold free of incumbrance, when these creditors were creditors of the deceased; but if not, then their mortgages follow the property into whosoever hands it may come.

The act of 1833, relative to injunctions, *disallows* the principle established by the Supreme Court, (5 *La. Rep.*, 87,) "that a privity must exist between the party enjoining and the judgment enjoined," to entitle the party to damages.

To entitle a party to an increase of damages, for the wrongful suing out an injunction, suit must be instituted on the bond.

mortgages, and consequently as to all those under which he was seized in the present case. The object of a probate sale of a succession, is to procure money with which to pay off and discharge all the debts due by the estate, on hypothecary and chirographary claims against it. The proceeds of the sale, or price of the property sold, takes the place of the thing sold, and the mortgage or chirographary creditors exercise their rights and enforce their claims on the *proceeds*, which before the sale, they had on the things themselves. But the rights of creditors of other persons than the deceased, which follow the thing or property into his hands, remain unaffected by the sale. So the rights of the present defendants and appellees in the injunction, (who were creditors of Haslett and not of Davis) were not affected by the sale of the slave in question, at the probate sale of Davis's succession.

It appears to this court, from the view taken of the case on its merits, that the injunction was properly dissolved, but that the District Court erred, in our opinion, in allowing to the defendants any damages, except their costs.

The practice of courts in giving damages on the dissolution of an injunction, against the party obtaining it and his sureties, was unauthorised by any law, until the year 1831, (*see Session Acts, page* 102.) The statute which was then enacted, has been held and decided to be applicable only to persons who were privy to the judgment, the execution of which is enjoined. The law contemplates a privity to exist between the party enjoining, and the judgment which is enjoined. See *Borie* vs. *Borie, f. m. c. et al. 5 Louisiana Reports,* 87.

The legislature, however, was pleased in 1833, to disallow in future the distinction which formed the basis of the decision of this court in that case. The present defendants, cannot, therefore, avail themselves of the act of 1833, because the plaintiffs obtained their injunction before the passage of that law.

The conclusion at which the court has arrived on this point, renders an examination of the claim of the defendants to have the judgment appealed from, amended by increasing

the damages allowed to them in the first instance. This remedy must be sought on the injunction bond.

WESTERN DIST.
1835.

OFFUTT ET AL.
vs.
HENDSLEY ET AL.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed; and proceeding to give such a judgment as in our opinion ought to have been rendered in the court of the first instance, it is ordered, adjudged and decreed, that the injunction be dissolved, so as to allow the defendants to proceed with their order of seizure and sale of the slave Randal, until a sufficient sum is raised to pay the balance due to them on the original price, to wit, the sum of seven hundred and fifty-four dollars, with interest at the rate of ten per cent. per annum, from July 19th, 1829, and costs of the seizure and sale. And it is further ordered, that the costs of the court below be borne by the plaintiffs in injunction; and those of the appeal, to be paid by the defendants and appellants.