PETER N. CUSELICH

VS

GEORGE W. HINGLE

# 7356

NO. 7356.

CHARLES F. CLAIBORNE, JUDGE.

June 4th. 1918.

208

CHARLES F. CLAIBORNE, JUDGE.

This is a petitory action.

The issues in this case have been much simplified by the statement in plaintiff's brief that he will press only that portion of his claim which asserts the title by him acquired from Benjamin Evans on August 6th. 1912 as set forth in § XV of his petition.

The facts are as follows:

William M. Prescott was at one time the owner of a portion of Section No. 55 of Township 19 S. R. 17 East in the S. E. Land District of Louisiana, Parish of Plaquemines, measuring one arpent more or less front on the Mississippi River by forty arpents in depth, bounded above by lands of Octave Barrois and below by lands of Joseph Angelo which tract of land had been patented to him by Patent No. 238 dated July 31st.1867, registered BK 22 p 365 during his marriage with Sarah Newman widow by first marriage of Davis Evans, and which was therefore community property.

Prescott died July 16th. 1884. Upon the petition of his widow his Succession was opened in the Parish of Plaquemines under the No. 58. She prayed for the affixing of the seals upon the effects of the deceased. The Court appointed Francis S. Caro, Third Justice of the Peace. The report of that officer shows that he affixed the seals on July 22nd. 1884.

The widow in another petition alleged that no issue was born of her marriage with the deceased, and that he had left no ascendants nor descendants, nor collateral relations known to her, and that it was necessary that a person should be appointed to defend the interests of the absent heirs of the deceased in case there should be any; that he had left movable and immovable property belonging to the community which

209

had existed between them and an inventory of the same was also necessary.

The Court appointed James Wilkinson, attorney-at-law, to represent the absent heirs of the deceased, and D. A. Thibaut, Clerk of Court, to make the inventory. The Inventory was made by Thibaut on July 25th. 1884 and filed in court.

On October 6th. 1884 the widow filed a petition in which she alleged that her husband died intestate, leaving neither ascendants nor descendants, and that she was entitled to be sent in possession of all the property left by him as owner for one-half, as surviving widow in community, and as usufructuary for the other half during life. Upon the same day an order was signed accordingly.

By an act dated December 5th. 1884 Widow Wm. M. Prescott sold to Morgan Loar and George W. Hingle, Jr. the following property:

"The undivided one-half of the following described property and her right of usufruct to the other half of said property, to-wit: (Then follows a description similar to the one given above) Which property was acquired by said vendor in the following manner, to-wit:- The one undivided one-half as widow in community of the late Wm. M. Prescott, and the other one undivided half as usufructuary of said Wm. M. Prescott, as per order of the Honorable the 24th. Judicial District Court, in and for the Parish of Plaquemines, bearing date October 6th. 1884, issued in the matter of the Succession of the said late Wm. M. Prescott No. 58 of the docket of said court. And the said Mrs. Sarah Evans widow of the late Wm. M. Prescott, furthermore binds herself, guarantees, agrees and stipulates to give and grant an absolute and perfect title to said purchasers on the 6th. day of October 1887 of the one-half of said described property of which she is now usufructuary."

The consideration was $300.00; $200.00 cash and one note for $100.00 payable October 6th. 1887.

This note of $100.00 was paid and the mortgage cancelled. We gather these facts from the briefs as the act of sale in not in the record.

210

Sarah Newman widow Davis Evans widow Wm. M. Pres-
cott lastly wife of James Morris died on July 3rd. 1889; her
succession was opened under No. 134 in the Parish of Plaque-
mines; Benjamin F. Evans alleging himself her only child and
heir was recognized as such and sent in possession by judgment
rendered July 23rd. 1889. Neither in the petition nor in the
judgment was this property mentioned.

In a supplemental petition filed August 6th. 1912,
twenty-three years later, Benjamin F. Evans alleged that Wm.
M. Prescott had acquired the Section 55 described above; that
while Prescott had sold certain tracts of said sections, some
parts of it remained, which had been inherited by his widow,
petitioner's mother; that in the judgment recognizing petition-
er as heir of his mother, this section 55 was not mentioned
and he desired to be sent in possession of all the rights of
Wm. M. Prescott and of his widow in the remaining parts of said
section.

To this petition were annexed the affidavits of
two witnesses and of petitioner himself swearing that Wm. M.
Prescott died leaving no heirs except his wife Sarah Evans.

On August 6th. 1912 there was judgment recognizing
Benjamin F. Evans as the owner of all the unsold portions of
Section 55, and sending him in possession.

By act dated August 6th. 1912 Benjamin F. Evans
sold to Peter Cuselich all his rights, titles, and interest in
and to the remaining parts of Section 55 acquired by him by
virtue of the two judgments hereinabove mentioned of July
23rd. 1889 and August 6th. 1912.

On November 26th. 1912 Peter Cuselich, through his
attorney James Wilkinson, made demand from Geo. W. Hingle for
the ownership of Section 55 and on April 5th. 1915 filed the
present suit.

In his petition in this suit Cuselich sets up as
his title the act of sale by Benjamin F. Evans to him dated
August 6th. 1912.

To this petition George W. Hingle pleaded the

exceptions of no legal right or cause of action and the pre-
scriptions of 3-10-20 and 30 years.

By consent of parties the exceptions were referred
to the merits, without prejudice to the rights of the defend-
ant.

For answer, defendant denied that Mrs. Evans Pres-
cott had any further interest in the Section 55 after her sale
to Morgan Loar and George W. Hingle Jr. by the act of December
5th. 1884; that the price of $300.00 paid by them to Mrs. Pres-
cott was in full settlement for the whole property.

There was judgment maintaining the exceptions of
no cause of action and prescription and dismissing plaintiff's
suit. The plaintiff has appealed.

In his reasons for judgment the Judge of the Dis-
trict Court interprets the transfer by Widow Prescott to Loar
and Hingle as an absolute and complete sale of all her inter-
ests in the property both as widow in community and as an heir
of her husband under Article 924 (918) of the Civil Code.

We do not find it necessary to give the Act of
Sale such a sweeping interpretation.

To our minds the Act of Sale indicates a very clear
intention on the part of Widow Prescott to divest herself of
all possible interest in the property in favor of Loar and
Hingle. She sold to them the undivided half of the property
which she had acquired as widow in community and her usufruct
of the other half, which/elements of ownership together repre-
sented all her present titles to the property; and furthermore
she bound herself and guaranteed to give an absolute and perfect
title to the purchasers on October 6th. 1887 of the one-half
of said property which did not then belong to her and of which
she was then only usufructuary. The judicial proceedings in
the Succession of her husband Wm. M. Prescott had been prepared
with skill and in accordance with Article 930 (924) of the
to form a foundation for her future title
Civil Code, the seals had been affixed, an inventory had been
taken, and an attorney for absent heirs had been appointed, and
a judgment rendered on October 6th. 1884 recognizing her as
widow in community and putting her in possession of all the

212

property left by her husband as widow in community for one-
half and usufructuary for the other half. She could not sell
the naked ownership of the one-half belonging to her husband's
succession, as far as his heirs were concerned, until after
the expiration of three years from the judgment putting her
in possession; therefore she bound herself to give and grant
to Loar and Hingle, after the expiration of said three years,
an absolute and perfect title to the one half of the property
of which she then had only the usufruct; that obligation was
included in the price of $500.00; *the* and in order to put it in the
power of the purchasers to compel the performance of that obliga-
tion, the credit portion of the price, $100.00, was to become
exigible only at the same time that her title might become per-
fect on October 6th. 1887 *in the absence of heirs of her husband* But in case of doubt the Code pro-
vides, Article 2474 (2449) "The seller is bound to explain
himself clearly respecting the extent of his obligations; any
obscure or ambiguous clause is construed against him". 108 La.
662; 120La. 498; 111La. 273; 43A -213; 962; 4A 120.

October 6th. 1887 came and went by; Loar and Hingle
paid their note of $100.00, but Widow WM. M. Prescott took no
steps to have herself recognized as the heir of her husband nor
to complete the title to Loar and Hingle. But if she had taken
such steps and had herself recognized as heir she could not have
sold that new title to the undivided half because her obligation
to transfer that title to Loar and Hingle had been incurred and
had been registered, and because any subsequent title she might
acquire to that property would enure to the benefit of her pur-
chasers Loar and Hingle. What she could not sell, she could not
transfer by inheritance to her son Evans, and what Evans could
not acquire *from his mother* he could not sell to Cuselich, the plaintiff herein.

C. C. 2475 (2450) The seller is bound to two prin-
cipal obligations, that of delivering and that of warranting
the thing which he sells".

C. C. 871 (867) "Succession is the transmission of
the rights and obligations of the deceased to the heirs".

C. C. 1013 (1006) "The effect of the simple accept-
ance of the succession xxx is such that when made by an heir

of age, it binds him to the payment of all debts of the Succession &c". Also C. C. 1423 (1372)

C.C. 3144 (3111) "If at the time of the contract the debtor had not the ownership of the thing pledged, but has acquired it since by what title soever, his ownership shall relate back to the time of the contract, and the pledge shall stand good".

C.C. 3304 (3271) "If a person contracting an obligation towards another, grants a mortgage on property of which he is not the owner, this mortgage shall be valid if the debtor should ever after acquire the ownership of the property, by whatever right".

Any title acquired by the vendor subsequent to the sale inures to the benefit of the vendee and his subsequent sale to another person transfers nothing. 50A 869; 49A 955; 43A 859; 39A 359; 33A 283; 25A 159; 18A 321; 16A 96; 5A 533; 12La170; 9 La. 100; 5 N. S. 246; 1 Greenl Ev § 24. An heir is bound to warrant and defend a title granted by the one from whom he inherits. 12La. 170; 9R 3; 2 Pothier Vente, p 77 §.169; 43 Dalloz Rep. Leg. p 241 § 939, 940, We are not concerned with the question of the validity of the judgments in favor of Widow Prescott or of her son Evans, nor of their titles, nor do we pass upon them. All we decide is that Widow Prescott sold a portion of Section 55 to Loar and Hingle, and that she was bound to warrant the title to it; that a like obligation rested upon her son and heir; that any title she or her son subsequently acquired to that land inured to the benefit of Loar and Hingle, and that neither she nor her son disclose a cause of action against them in a petitory action alleging a better title.

Judgment affirmed
June 4th. 1918.