## No. 445.

### Thomas R. Geren v. E. H. Gruber, Tax Collector.

The assessment for revenue purposes consists in the descriptive lists and the valuation of property by the officers designated for that purpose, and if any discrepancy in the description of the property exist between the original lists and the copies furnished, the description in the original must control.

This court has no jurisdiction over the question of excessive taxation of property, after the delay given to taxpayers to correct their assessment has expired, if it ever has.

Inasmuch as the registry of the list of delinquent taxpayers was made before the recordation of the plaintiff's deed, he can not raise the question of registry, even if necessary to procure the right of preference in favor of the State.

Taxes are not debts in the ordinary sense of that word, but forced contributions for the support of the body politic, and it is competent for the sovereign to provide how these contributions shall be collected and to say whether the right of preference shall exist for the payment of the same, and for what length of time.

The right of taxation is one of the attributes of sovereignty, and the fundamental law of the State provides that it shall be equal and uniform and *ad valorem*. It is the property of the State which is to be taxed, and it is immaterial to the State whether it belongs to A or to B. As long as the tax is unpaid, the State has a right to exact it.

It is also competent for the State to make each and every piece of property owned by any one, responsible for the whole amount of the taxes assessed to him—and such is in fact the law.

The right of redemption accorded *ex gratia* must be exercised under the conditions imposed.

The constitutional objection that the penalties are being collected without due process of law, and that they can only be collected by hypothecary action, has no force. As there is no debt and no mortgage to enforce, the hypothecary action could not be maintained. Due process of law is provided in the statute on the subject. The same statute declares that the property is burdened with the taxes and a lien and privilege to secure the payment of the taxes, and that it will remain burdened into whatever hands it may pass.

There is no force in the objection that the amount of the penalties is not mentioned in the recorded list against the delinquent taxpayer. The penalties, like legal interest, are fixed by law.

The recordation of a description of the property of a delinquent taxpayer is the *mode of seizure* provided for by the statute.

The law maker did not contemplate the advertisement of the property before the seizure. It declares that the tax collector, on the fourth day of such recordation, may proceed to sell without (other) legal process, after advertising, etc., etc. The four days must be regarded as the days of grace allowed the delinquent before advertising his property for sale—corresponding to the delay accompanying notices of seizures.

The plaintiff's purchase of certain lots from the original owner, as whose property they were assessed, could only have invested him with such rights as the original owner and delinquent taxpayer, and that was the right of redemption.

Not having offered to avail himself of the right of redemption under the conditions prescribed, the plaintiff had no interest or right to interfere by injunction with the proceeding of the tax collector.

The law authorizing one hundred per cent. damages for wrongfully injoining the collection of taxes, does not apply when one, other than the person to whom the taxes are assessed, sues out the injunction, and the original taxpayer can only do it prior to the forfeiture.

APPEAL from the Eighteenth Judicial District Court, parish of Webster. *Turner*, J. *Watkins & Fort*, for plaintiff and appellant. *L. B. Watkins*, for defendant and appellant.

Ludeling, C. J. The plaintiff injoined the sale of lots 120 and 121 in the town of Minden, seized and advertised for sale to pay the taxes due by E. E. Archinard, for the year 1871, on the grounds, that " the house and lots 120 and 121 are not the property of E. E. Archinard,

but the property of your petitioner; that there is no lien or mortgage for the State and parish taxes of E. E. Archinard on said lots, and no legal seizure of said lots has been made, and said lots are not liable for the taxes of E. E. Archinard." He further alleges that the principal amount of the taxes against E. E. Archinard was for stock in trade, which was erroneous, since his stock was sold in 1871 to Samuel Archinard, to whom the same was assessed," etc.

The facts disclosed by this record are that E. E. Archinard was doing a commercial business in Minden in 1871, where he resided ; that the tax collector left with him a blank descriptive list, to be filled by him with a correct description of his taxable property, for assessment; that this list was returned to the tax collector filled up, under oath, and signed E. E. Archinard, per G. W. Rawls, who was his clerk and agent; that this was subsequently ratified by E. E. Archinard in repeated conversations with the tax collector, in which Archinard complained of the high taxes on the capital in trade, inasmuch as he had only been in business a few months.  That this descriptive list of the property described lots 120 and 121, in the town of Minden, with a house thereon ; that this property was assessed or appraised by the board of assessors and filed in the recorder's office in 1871, and that the taxes of E. E. Archinard are due and unpaid.

By an act under private signature, dated twenty-eighth of August, 1872, lots 120 and 121 were sold to the plaintiff.  This act was duly proved and recorded on the nineteenth day of July, 1873.  On the ninth day of December, 1872, the delinquent list for the parish of Webster was recorded in the mortgage book.  In this list the lots are described as numbered twenty and twenty-one, and so they are in the copy of the assessment roll filed in the recorder's office. After advertising the sale of the property the tax collector discovered the error in the description, and he attempted to correct it by having recorded in the mortgage book a corrected list of the property of the delinquent taxpayer, by making it correspond with the original descriptive list furnished by E. E. Archinard.

The first and principal questions are, was there an assessment, and what constituted that assessment? Section 23 of the revenue act of 1871 provides, "that each assessor appointed for the city of New Orleans, and the tax collectors appointed for each of the parishes, shall proceed, by diligent inquiry, between the first day of February and the first day of July of every year, to ascertain the names of all the inhabitants of their respective parishes, who are taxable for licenses or for property, or for both, and also to obtain a description of all the taxable property within the same.  And to these ends and purposes said assessors and tax collectors shall, without delay, serve on each of

the taxpayers of their respective parishes or districts a written or printed notice, containing an enumeration of all the objects of taxation, both real and personal, as fixed by law, and requiring each taxpayer so notified to fill up the blanks in said notice with such of the objects of taxation aforesaid as he possesses or has under his control, and to give the value of each of said objects of taxation, and to make a declaration over his signature to the correctness of the statements so made, declared and signed. And said statement so filled up, etc., shall be returned to said assessor or tax collector, as the case may be, on or before the first day of July, following service of said notice."

Section 24 provides that " the whole of said lists shall be carefully stitched or bound together, and shall be deposited with the descriptive or assessment rolls, as hereinafter provided for, in the offices of the parish recorders—those for the city of New Orleans in the office of the board of assessors," etc.

Section 39 provides that the tax collectors shall "complete their descriptions of all the taxable property of their respective assessment districts or parishes, on or before the first of August of each year, and shall affix to it an affidavit made by them ;" and said assessors and tax collectors " shall deposit said rolls with the board of assessors for the city of New Orleans, or with the parish recorders, as the case may be ;. and the respective officers, with whom the rolls shall be lodged, shall indorse upon them the time when they were received."

Section 40 provides that "the property in the descriptive rolls of the tax collectors shall be assessed by the clerk of the district court, the recorder and sheriff," etc. "For this purpose they shall give notice in the official journal of the parish to all taxpayers * * * that they will assess the property of the parish for one month, commencing from first day of August and ending first day of September."

Section 42 provides that "after the assessment is completed, the tax collectors shall make three fair and correct copies of the assessment rolls of their several parishes, which shall be approved and signed by said board of assessment. One of these copies they shall immediately forward to the Auditor of Public Accounts; one they shall deposit, together with the descriptive rolls, in the office of the recorder, and the third they shall deliver to the tax collector upon the order of the Auditor of Public Accounts."

We conclude that the assessment consists in the descriptive lists and the valuation of the property by the officers aforesaid, and that if any discrepancy in the description of the property in the original lists and the copies exist, the description in the original must control.

The evidence shows that the original descriptive roll was made, and that the officers whose duty it was to make the appraisement of the

property did so on said original rolls. This court has no jurisdiction over the question of excessive valuation of the property, after the delay given to taxpayers to correct their assessments has expired, if it ever has.

Inasmuch as the registry of the list of delinquent taxpayers was made before the recordation of the plaintiff's deed, he can not raise the question of registry, even if registry be necessary to preserve the right of preference in favor of the State, about which we express no opinion here.

Taxes are not debts in the ordinary sense of that word, but forced contributions for the support of the body politic, and it is competent for the sovereign to provide how these contributions shall be collected, and to say whether this right of preference shall exist, and for what length of time. The right of taxation is one of the attributes of sovereignty, and the fundamental law of the State provides that it shall be equal and uniform and *ad valorem*. It is the property of the State which is to be taxed, and it is immaterial to the State whether it belongs to A or to B. So long as the tax is unpaid the State has a right to exact it, and in justice to the other property holders the State is bound to exact it.

It is also competent for the State to make each and every piece of property owned by any one, responsible for the whole amount of the taxes assessed to him. And such in fact is the law. Nor is there any inconsistency in saying that it is the property which is taxed, and that each piece of property in the possession of the taxpayer is responsible for the whole amount of taxes with which he is assessed. The State has the power to make such laws as in its discretion will secure and enforce the prompt collection of taxes. And we fail to see wherein this provision of the law violates the constitution.

The right of redemption, accorded *ex gratia*, must be exercised under the conditions imposed. Nor do we perceive the force of the constitutional objection that the penalties are being collected without due process of law, and that they can only be collected by the hypothecary action. As there is no debt and no mortgage to enforce, the hypothecary action could not be maintained. Due process of law is provided in the statute. The same statute declares that the property is burdened with the taxes and a lien and privilege to secure the payment of the taxes, and that it will remain so burdened into whatsoever hands it may pass. The plaintiff is presumed to know the law, and he can not defeat the summary process for the collection of taxes by buying the property subject to the taxes. As well might a third person in possession of property subject to a mortgage with the pact *de non alienando*, say that our executory process is unconstitutional. Nor is there

any force in the objection that the amount of the penalties is not mentioned in the recorded list against the delinquent taxpayer. The penalties, like legal interest, are fixed by the law.

The recordation of a description of the property of a delinquent taxpayer is the mode of seizure provided by the statute. Section 57, act 42 of 1871, p. 120. But the law maker did not contemplate the advertisement of the property before the seizure. It declares that the tax collector, "on the fourth day of such recordation, may proceed to sell without (other) legal process, after advertising three times within twenty days in the official journal." The act of 1873 only changes the length of time for advertising. The four days must be regarded as the days of grace allowed the delinquent before advertising his property for sale, corresponding to the delay accompanying notices of seizures.

The complaint that there has been no seizure comes with a bad grace from the plaintiff, as, if true, he would have no just cause to complain. Nor is he less inconsistent when urging, as an argument against the sale of lots 120 and 121, that they were forfeited to the State by the default of the taxpayer to pay his taxes. His purchase of these lots from the original owner, as whose property they were assessed, could only have invested him with such rights as he (the original owner and delinquent taxpayer) had, and that was only the right of redemption.

We have already said, this right can only be exercised under the conditions imposed by the law, to wit: by paying the taxes for which the property is liable, with the penalties and costs. Not having offered to do this, the plaintiff had no interest or right to interfere with the proceedings of the tax collector.

The law authorizing one hundred per cent. damages for wrongfully injoining the collection of taxes, does not apply, when one other than the person to whom the taxes are assessed, sues out the injunction, and the original taxpayer can only do it, prior to the forfeiture.

It is therefore ordered and adjudged that the judgment of the lower court be avoided, and that there be judgment against the plaintiff and in favor of the defendant dissolving the injunction, with costs in both courts.