## No. 9739.

### JOHN A. MORRIS ET AL. VS. J. L. LALAURIE ET ALS.

1. In all judicial partitions by licitation, or in kind, the liens, privileges and mortgages, such as are established by the Civil Code, which are recorded against the share of one of the co proprietors or co-heirs, by the mere fact of the partition, attach to the share of property or proceeds allotted to him, and are of right dissolved as to the shares of the other heirs or co-proprietors.

2. The foregoing rule is inapplicable to a licitation of property held in joint ownership, when it is adjudictated to a party having previously no interest in it. Such an adjudication is not in legal intendment a partition, but a sale, and does not affect the rights of the mortgage creditors.

3. Taxes are not debts in the ordinary acceptation of the term, but contributions required of the citizen for the support of the government, and their assessment does not constitute a technical judgment, against which set off can be pleaded; nor are they contracts

between party and party, either express or implied. The assessment and collection of taxes is a legal proceeding, but not judicial process.

4. All licenses or taxes assessed in the years 1870 and 1877 inclusive are a lien and privilege on the property of the person assessed, "any alienation thereof or incumbrance thereon notwithstanding," until some are paid; and shall be paid "by preference to all mortgages and incumbrances."

5 A sale of property, against which liens, privileges and mortgages exist and are recorded in favor of the State for taxes or licenses, remain undisturbed thereby, and are not extinguished against the property, and not transferred to the proceeds of sale. This is true, whether it be a judicial sale or extra-judicial.

APPEAL from the Civil District Court for the Parish of Orleans.
     *Monroe, J.*

*W. S. Benedict* and *Henry Renshaw* for Plaintiff and Appellant:

1. In partitions by judicial sale, any one interested in giving or receiving a clear title, or in having the proceeds distributed, may have the property freed from incumbrances, and the mortgages referred to proceeds. 35 Ann. 528, 531.

2. By such sale the property passes disincumbered and mortgages are transferred to proceeds. 37 Ann. 321; 28 Ann. 714.

3. Such sale shifts the liens or mortgages from the property to its proceeds. 27 Ann. 127.

4. Purchaser cannot be compelled to pay the price before he is tendered an unincumbered title. 27 Ann. 127.

5. In judicial partitions in kind, the mortgages, liens and privileges against one of the co-proprietors attach to his share and cease to attach to the shares of the others, C. C. Art. 1338.

6. As a corollary from the above, such mortgages, liens and privileges should, in partition by sale, attach to respective shares in proceeds. See in this connection 38 Ann. 108.

7. In succession partitions by sale, the property passes free from mortgages affecting shares of co-proprietors, and such mortgages are transferred to shares of the latter in the proceeds. 38 Ann. 108, and authorities there cited.

8. The same rule applies to partitions between major co-proprietors by judicial sale, as to partition of successions. 38 Ann. 108, 109; C. C. 1290.

9. A succession partition by sale frees the property from tax privileges, and such privileges attach to proceeds. 33 Ann. 260. In this connection see 30 Ann. 1261; 23 Ann. 298.

10. An adjudicatee at judicial sale, desiring a clear title, may call on those asserting rights on the property, to settle their claims contradictorily with each other. 35 Ann. 759.

*M. J. Cunningham,* Attorney General, for the State, Appellee:

1. Recorders, sheriffs, notaries public and other persons authorized to convey real estate by public act, are prohibited from passing or executing any act of sale or alienation whatever until the taxes due on the property sold or alienated have been first paid, to be shown by the tax collector's receipt or certificate to that purpose. R. S. sections 3615, 2616, 3620, 3621; sections 37 and 102 of Act 96 of 1877; sections 69, 70 and 71 of Act 96 of 1882; sections 74, 75 and 76 of Act 98 of 1886.

2. A violation of this law is denounced as a misdemeanor, and subjects the officer offending to a severe penalty. Authorities cited in No. 1.

3. No sale or other alienation of property can affect the taxes assessed thereon; but it may still be seized, advertised and sold as the property of the taxpayer to whom assessed, to enforce payment of delinquent taxes. Section 52 of Act 77 of 1880; sec. 60 of Act 96 of 1882.

Morris et al. vs. Lalaurie et als.

4.  The ordinance for the relief of delinquent taxpayers in the Constitution of 1879, and the
    Acts of the Legislature passed subsequently to carry this ordinance into effect, have
    given a fixed status to properties upon which taxes prior to December 31, 1879, are due.
    This class of property is subject to sale under Act 82 of 1884, and the rights of the State
    therein conferred cannot be impaired by proceedings in the courts which involve no
    question subject to judicial determination.

5.  An order of court erasing and canceling the tax liens and privileges in favor of the
    State and transferring them to the proceeds of sale of the property, would change exist-
    ing methods prescribed by the legislative power for the collection of the revenues of
    government. Such an order would be violative of Article 15 of the Constitution.

6.  When, in a rule to secure the erasure and cancellation of tax liens and transferring the
    rights of the State to the proceeds of the sale of the property, the mover does not allege
    the unconstitutionality of the tax, the invalidity of its levy, or an illegality in the mode
    of procedure, no question is presented for judicial determination. In the absence of any
    such allegation, any interference on the part of the judiciary with tax measures or pro-
    cesses would be an usurpation of the functions of a co-ordinate department of the gov-
    ernment.

7.  Any statute tending to insure the collection of the public revenues should be rigidly
    upheld and full effect given to its provisions. Cooley's Constitutional Limitations, p.
    70; 46 Wis. 175; 37 Ib. 75; 42 Ib. 502, 527; 43 Ib. 48, 55; 45 Ib. 519.

8.  Courts should rather assist in removing the obstructions which clog the wheels of
    government than interpose delays and obstacles which impede the collection of her
    revenues.

9.  Those provisions of the Civil Code under which privileges and mortgages are cancelled
    and transferred to the proceeds by succession, judicial and partition sales, only affect
    the privileges and mortgages treated of in the code.

10. They are private laws, and do not affect or have reference to taxes or the mortgages
    and privileges securing them.

11. Tax mortgages and privileges are established, regulated and controlled by the revenue
    laws exclusively. They are unknown to the code, and in no manner affected by its pro-
    visions.

12. Privileges and mortgages affecting an entire property are not cancelled and transferred
    to the proceeds of the sale of such property made to effect a partition among co-propri-
    etors.

*F. C. Zacharie, Amicus Curiæ*, on the side of the State.

---

The opinion of the Court was delivered by .

WATKINS, J.   Under a decree of this court in John A. Morris et al. vs.
J. L. Lalaurie consolidated with J. L. Lalaurie vs. John A. Morris, 34
Ann. 204, two pieces of improved real estate in this city were sold on
the 11th of April, 1882, by the sheriff at public auction in block, and
same were adjudicated to Andrew J. Murphy for $5,600, upon the fol-
lowing terms of credit, viz : one-third cash, and the remainder on a
credit of one and two years.

That decree recited " that from the proceeds after deducting costs,
charges and taxes, there shall be paid to Alfred Marchand one-third ;
to the Factors and Traders' Insurance Company, one-third, and the

4

remaining one-third to J. L. Lalaurie," with the reservation to John A. Morris of certain mortgage rights.

This sale was made in order to effect a partition among the co-proprietors, by licitation, the property not being susceptible of division in kind.

The certificate of mortgages discloses the existence of a large number of judicial mortgages and liens, privileges and tax mortgages, in favor of the State and city of New Orleans, recorded against said property, and at various dates during the years 1870, 1872, 1873, 1874, 1875, 1876 and 1877, and aggregating large amounts, more than $2000 to the State and $20,000 to Widow Mary Murphy—and she had no interest in the property.

Andrew J. Murphy, as purchaser, took a rule on the parties in interest to show cause why all of said liens, privileges and mortgages should not be cancelled and erased, and same relegated to the proceeds of sale.

For some cause it was abandoned and the present one was taken by Alfred Marchand, one of the original co-proprietors, on the State of Louisiana, D. Pochelu, Madame Bougère and Mrs. Mary Murphy, to same effect.

On the trial, judgment of non-suit was entered in respect to city taxes without objection, and was made absolute in respect to the respective mortgages of John A. Morris, Madame Bougère, D. Pochelu, and Mrs. Mary Murphy; but it was discharged and disallowed in respect to inscriptions of liens, privileges and mortgages in favor of the State, during the years enumerated, in the mortgage certificate.

From this judgment, plaintiff in the rule alone appeals.

The only question presented for our consideration and determination is whether this partition sale had the legal effect of discharging the liens, privileges and mortgages in favor of the State for taxes, and transferred them to the proceeds of sale.

The answer of the Attorney General affirms that no sale, pledge, alienation, or incumbrance on real property, can affect the State taxes assessed against the same; and that same may be lawfully seized and sold in satisfaction thereof, notwithstanding any alienation of same, or *prior* incumbrance thereon.

I.

We will argue this question on the hypothesis that all the proceeds yielded at the sale were cash, though, in point of fact, only one-third of $5,600 was paid in cash.

The various decisions cited as bearing on the question, are neces-

sarily predicated on R. C. C. 1338, 1290 and 1383, and are controlled by them.

It is provided by R. C. C. 1338: "In all judicial partitions, when the property is divided in kind, the *mortgages, liens* and privileges against *one* of the co-proprietors shall, by the mere fact of the partition, attach to the shares allotted *to him* by his co-proprietors," etc.

It is provided by R. C. C. 1383: "The heir to whose share an immovable, or some other thing liable to be mortgaged, has fallen, *is not bound by the mortgages which his co-heirs* may have given on their individual shares of the same, previous to the partition; and *these mortgages are dissolved of right, except upon the property which falls to the heirs who have given the mortgages.*"

It is provided by R. C. C. 1290: "All rules established in the present chapter * * are applicable to partitions between co-proprietors of the same thing," etc.

These principles were recognized in Beltran vs. Gauthreaux, 38 Ann. 106, and those previously announced in 33 Ann. 53, Life Association vs. Hall, and 35 Ann. 531, Bayhi vs. Bayhi, were affirmed.

It is also declared that a partition by licitation has the same effect, and that "mortgages should attach to the share of the proceeds coming to the co-proprietor liable for the same."

We do not understand these decisions as going to the extent of declaring that a judicial sale for the purpose of partitioning real property of co-heirs or co-proprietors could discharge judicial or other mortgages resting upon the *entire* property in favor of some third person.

It has frequently been held that though a probate sale, made in pursuance of an order of court, discharges the mortgages *granted* by the *deceased*, yet it does not affect those with which the property was burthened when it came into his possession. 6 N. S. 386; 5 La. 470; 9 La. 12; 3 R. 5; 11 Ann. 383; 29 Ann. 385.

The provisions of Sec. 2 of Act No. 71 of 1843, are literally incorporated into, and constitute R. C. C. 1338.

Long before its incorporation into the Civil Code in its revision in 1870, this statute had passed under judicial interpretation by this Court.

In Lecarpentier vs. Lecarpentier, 5 Ann. 497, it was said: "The act of 1843, relied on by the plaintiffs, is not applicable to licitations under which the property is adjudicated to *a party having previously no interest in it. Such an adjudication is not, in legal intendment, a partition. It is a sale, and does not affect the rights of mortgage creditors.*

"Any intimation of this Court to the contrary must have originated in a *misreading of the Act of* 1843."

A sheriff's sale does not discharge a special mortgage recorded against the property sold, unless the amount of the bid exceed it in amount.   C. P. 706.

A sheriff's sale under *fi. fa.* is always made subject to legal and judicial mortgages.   C. P. 710; 5 Ann. 736.

All judicial sales are made in pursuance of special laws, and can have no other force or effect than are thereby given to them.

## II.

But, conceding for the argument, that the effect, claimed by the plaintiff in the rule, can be given to the alleged partition sale—can it be argued therefrom that it likewise discharged the State's liens, privileges and mortgages to secure the payment of delinquent taxes of the years 1870 to 1877, inclusive?

The recordation of such liens, privileges and mortgages, and the enforcement thereof must, of necessity, be controlled by the revenue statutes in force at the date of assessment thereof and the miscellaneous ordinances for the relief of delinquent taxpayers and statutes enacted in conformity thereto.   Act 98 of 1882 and Act 82 of 1884;  State ex rel. Taylor vs. Houston, 37 Ann. 56.

Counsel for plaintiff relies mainly on Succession of J. W. Zacharie, 30 Ann. 1260, and Succession of Dupuy, 33 Ann. 256.

The Court said in the former case: "The property on which were assessed the taxes, the amount of which is claimed by the city, has been sold under orders of the Second District Court, and it is clear that any right which it may have had on said property was transferred from it to the proceeds of the sale."

Of that decision it is sufficient to say that the sale in question was made in that succession; and the city opposed the executor's account, "for the reason that he refused to class it as a creditor of the succession for the taxes of 1860 to 1877."

Of the decision in the latter, much the same may be said.   The city opposed an account in that succession upon the same ground.   The Court said: "When the sale took place the privilege attached to the proceeds and was the first privilege thereon, and the city had a legal right to claim taxes out of these proceeds and enforce her privilege therefor by such direct proceedings as was instituted in this case."

Neither the State nor its officers were parties to either of those proceedings, and whatever may be said of their force and effect as to the

taxes of the municipal corporation consenting thereto, those cases cannot conclude the right of the State when she appears in court and asserts her rights, contradictorily, resisting a like claim by her citizens.

It is true that R. C. C. 1338 employs the phrase "the mortgages, liens and privileges;" but it is fair to assume that the mortgages, liens and privileges recognized and established by that Code, alone, were in contemplation of it.

They are merely securities for *debts* and accessories to principal contracts.  R. C. C. 3278, 3284.  They "can be claimed *only for those debts* to which they are expressly granted in this Code."  R. C. C. 3185.

Their effect cannot be extended to any cases not therein enumerated by inference or comparison.

In City of Shreveport vs. Gregg & Ford, 28 Ann. 836, it was held: "It is correctly contended on behalf of the plaintiff, that taxes are *not debts* in the ordinary sense of the word, but contributions required of the citizen for the support of the government, and without which it could not be supported, and they cannot be seized, sold or compensated."  26 Ann. 694, Geren vs. Gruber.

Cooley on Taxation says: "Taxes are *not debts* in the ordinary sense of the term, and their allowance will in general depend on the remedies which are given by statute for their enforcement.    *    *    *

"Taxes are not demands against which a set-off is admissible; their assessment does not constitute a *technical* judgment; nor are they contracts between party and party, either express or implied; but they are the positive acts of the government through its various agents, binding upon the inhabitants, and to the making and enforcing of which their personal consent, individually, is not required."  30 Ann. 541, City vs. Davidson; 36 Ann. 436, City vs. Waterworks.

In Union Towboat Company vs. Bordelon, 7 Ann. 192, it was held: "It is true, as contended, that the functions of one department of government are kept distinct, and the executive cannot divest judicial process.  But the assessment of taxable property and the collection of taxes are *legal* proceedings, or process but *not judicial* proceedings, or process.  If these proceedings take place illegally  *  *  *  then the functions of the judiciary may be invoked, but not otherwise."

### III.

Since the line of demarkation has been clearly drawn between debts and taxes and privileges and mortgages, therefore, it were well to examine the revenue laws under which the taxes under consideration

were assessed, and ascertain their requirements in regard to their preservation and enforcement.

Section 38 of Act 114 of 1869, declares: "That all licenses and taxes assessed by law on the property of any person, firm, company or corporation, are hereby declared a lien and privilege on the real property of such person, firm or corporation for his or their entire tax, *any alienation thereof or any incumbrance thereon* notwithstanding; and shall exist in favor of the State and parish for the amount of taxes assessed, and *shall be paid by preference to all mortgages and incumbrances.*"

Section 37 of Act 42 of 1871, is couched in even stronger terms. It includes, "movable and immovable property," and confers a lien and privilege for the "entire license or tax," and continues same in force "*until same be fully paid,*" not alone in respect to the licenses and taxes, but likewise "penalties and costs and charges."

This revenue law remained in full force, and the taxes of all the intermediate years were assessed in pursuance thereof until the 20th of April, 1877, when Act 96 of that year went into operation.

Section 36 of that Act provides: "That from the filing of the assessment rolls in the office of the recorder, as provided in this act, the property therein mentioned shall be affected with a lien, privilege and right of pledge, which shall rank all other privileges and exist *without further registering until the payment of the tax * * provided* that the privilege and right of pledge be not considered as lasting a longer period than three years."

The effect of these statutes has been interpreted by the ordinance for the relief of delinquent taxpayers.

It declares that in the event the taxes and licenses due the State prior to the 1st of January, 1879, are not fully paid by the 1st day of January, 1881, "the interest, penalties, costs, fees and charges hereinbefore recited, shall revive *and attach to the property upon which the taxes and licenses are due, and such property shall then be sold* in the manner provided by law, and the *title to the purchaser shall be full and complete.*"

To put this ordinance in force, Act 98 of 1882, was enacted.

Section 1 declares: "That it shall be the mandatory and imperative duty of each tax collector in the city of New Orleans, and of each sheriff and *ex officio* tax collector throughout the State, * * within four months after said promulgation, to advertise for sale * * *all property upon which any taxes* due to the State of Louisiana or to any parish, prior to January 1, 1880, *remain unpaid* or unsettled by partial payment," etc.

Section 1 of Act 82 of 1884, is couched in similar language.

From these express and unambiguous statutory provisions, there can be no reasonable doubt of the legislative intention in their enactment. They were intended for the sole purpose of enforcing the faithful and *certain* collection of the State's revenues; and in order to accomplish this result, the law declared that the lien and privilege of the State for taxes should rank and prime any and all other liens, privileges and mortgages, and that same should adhere to the property assessed for the *entire* license or tax of the person assessed, any alienations thereof or incumbrances thereon notwithstanding.

We are, therefore, clearly of opinion that the alleged partition sale did not have the effect of discharging from the property sold the lien, privilege or mortgage of the State for taxes assessed in either one of the years enumerated on the certificate of mortgages, and that same is entirely unaffected by the alienation thereof or the incumbrances thereon; and that the property passed into the power and possession of the purchaser charged therewith, and also the penalties, charges and cost.

Judgment affirmed.

Poché, J.   I concur in the decree.