No. 3590

Second Circuit

SHOLARS v. DAVIS

(March 24, 1930. Opinion and Decree.)
(June 2, 1930. Rehearing Refused.)

Harry Fuller, of Winnfield, attorney for plaintiff, appellee.

Michel Provosty, of New Orleans, and Wm. R. Mecom, of Columbia, attorneys for defendant, appellant.

ODOM, J. Defendant was going from place to place and from house to house in the parish of Winn selling goods, using a motor vehicle to transport them. Not having paid a license, the tax collector brought proceedings against him by rule to show cause why he should not pay license as a peddler, under section 18, Act No. 205 of 1924, as amended by Acts No. 299 of 1926 and No. 241 of 1928.

The defense is a general denial, but is elaborated and specifically set out in paragraph 15-A of the answer, which reads as follows:

"Further answering plaintiff's petition, respondent avers and says: That under the mode and method of transacting his business and carrying on his occupation and vocation, he is not required to pay an annual license tax; that he is not a peddler and is therefore not required to pay a peddler's license; that the goods and wares handled and delivered by him to his respective customers or billed or booked by respondent on a certain day and date to be delivered one week later and are actually delivered to his respective customers one week from the date of taking the order therefor; that all goods and wares sold and delivered by respondent are sold under and by virtue of an order previously solicited and not delivered by respondent until he returns to his base of supplies and procures goods, wares and merchandise in accordance with the orders taken and solicited by him; that under this method of doing business he does not come within the scope of a peddler as denounced by the statutes of the State of Louisiana, especially Act 205 of 1924, as amended by Acts 299 of 1926 and 241 of 1928."

Defendant further contends before this court that the acts under which the license is claimed are unconstitutional. The district judge, in a written opinion, after reviewing the facts, held that defendant was a peddler and subject to the license tax demanded. Defendant appealed.

## OPINION

On the facts presented, we concur with the district judge.

Defendant was engaged in selling various articles of merchandise in the parish of Winn, which merchandise he carried in a motor vehicle. He went from place to place and from house to house carrying his goods with him, selling and delivering them to whomsoever would buy and in such quantities as the purchaser wanted. But the defense is that he never sold any articles without an order previously taken. He went into detail as to his system of doing business, which he said was as follows: He made trips through the country offering goods for sale, and took orders from those who wished to buy, the orders specifying the kind, quantity, and price of the goods which were to be delivered later; that after taking the orders, he sent them to the Standard Coffee Company, of New Orleans, where they were filled and the goods shipped to him, and that upon receipt of the goods, as ordered, he loaded them on his truck, delivered and collected for them.

If he did that and only that, he was not a peddler. One who takes orders for goods to be delivered on a future date is not a peddler. A peddler is a retail dealer who travels about from place to place and from house to house, either on foot, horseback, or vehicle, carrying his stock with him, exposing his goods for sale, and then and there selling and delivering them. The testimony abundantly shows that defendant was conducting that kind of business.

His chief business seems to have been that of selling coffee for the Standard Coffee Company of New Orleans, but he carried and sold many other articles of merchandise not shown to have been received from that company. He took orders for coffee and other articles, and testified that, at the time his goods were seized, he had none on hand except such as had been previously ordered, but his testimony to that effect was disproved. At the time defendant's goods were seized, the sheriff took his order book as well,

which book did not show orders for all of the goods. But at the trial, he said that was not the only order book he had. On being asked to produce his other book, he said that he would not do so, as it was his private property, or "private business." But when the district attorney suggested to the court that he would apply for a subpoena duces tecum, defendant produced later another book showing orders, many of them bearing evidence of changes and erasures. A check of all the orders he produced, including those in the book taken by the sheriff and those in the book later produced by defendant, shows the following: 67 orders for coffee (although he had 84 packages); 1 for extract; 2 for cocoa; 1 for cold cream; 1 for tablespoons; 3 for soap; 1 for steel wool; 1 for forks; 1 for Flash cleaner; 1 for starch; 1 for furniture polish; 1 for a blanket; and 1 for cups and saucers.

But, in addition to the articles above listed for which he produced orders, he had on hand in the truck seventeen other articles of merchandise for which he had no orders, consisting of soap powder, ammonia powder, linen tablecloths, bread pans, coffee pot, face powder, pie filling, tea, peroxide cream, bath salts, dental cream, shaving cream, baking powder, talcum powder, heat powder, hair tonic, shampoo oil, and black pepper. He was carrying all these articles along with him. His testimony, therefore, that he carried no goods except to fill orders previously taken counts for naught. His carrying these goods around with him without orders for them leads forcibly to the conclusion that he was carrying them for the purpose of selling and delivering them, if he could. Otherwise, he would have left them at the base of supplies and not incumbered his truck with them until he had orders for them. Such, however, is only a circumstance which would not warrant a verdict that he was in fact peddling. But coupled with this circumstance is the fact that he did sell and deliver goods from his truck without orders.

Mr. J. A. McPherson testified that defendant stopped at his house on one occasion to deliver a package of coffee which his wife had previously ordered, and that he personally purchased at that time from defendant one package of Flash cleaner and a bottle of extract for which no order had been taken, and that he went with defendant to the truck and got the goods. Mr. McPherson further testified that on one occasion he was present when a man named Crip Hayes walked up to defendant's truck and asked if he could get some coffee, and defendant told him he could, and that the coffee was then and there sold and delivered.

Mrs. Frank Varnell testified that she had a standing order for coffee, and that, when defendant came to deliver it, he would ask if she wanted anything else; that on one occasion she told him that she wanted some laundry soap, toilet soap, and baking powder, and that defendant went to his truck, got the latter articles for which she had given no previous order, brought and delivered them to her.

M. D. Haynes testified that he purchased one package of coffee for which he paid $1, and had given no order for it, and, while it was "Standard" coffee taken from the same truck, he could not positively identify defendant as the man who sold it, although he was reasonably sure that he was.

Defendant admitted that he had on one occasion sold and delivered one package of coffee to Mr. Barnes for which he had no previous order, but said that the pack-

age was ordered by Mr. Pond, who refused to take it, and he let Mr. Barnes have it, but did not know whether it was the same package. Defendant finally admitted on cross-examination that he did have goods in his truck for which he had no orders, and in explanation said that they were goods for which orders had been given by parties who refused to take them when tendered, and that he had failed to take them out of the truck, but he failed to produce the orders and did not state who had given them.

Defendant's intent and willingness to sell goods for which he had no orders is evidenced, not only by the fact that he did so sell, but by the fact that, when he delivered goods for which he had orders, he would ask the customer if there was anything else wanted at that time, not later on, and, if an affirmative answer was received, he would go at once, get and deliver the goods.

Counsel for defendant, who filed a most able and exhaustive brief in this court, urge the point that the making of one sale or a few isolated sales will not render one a peddler, and cite a long list of authorities in support of this contention, the leading case being that of Commonwealth vs. Ober, 12 Cush. (Mass.) 498, decided in 1853, which has been referred to in some of the more recent cases.

We have read that decision and many others in which traveling vendors were held not to be peddlers, and find that the facts found by the court in each of them are entirely dissimilar from those in the case at bar. In the Ober case, supra, the court found:

"* * * That the defendant was the agent of a firm in Boston, manufacturers of Britannia ware, that they were accustomed to receive orders from country traders and storekeepers, which they supplied, that they send their wares to their customers in a two-horse wagon, of which the defendant had charge, that he delivered them the goods ordered, and that he sometimes delivered to traders and store-keepers, goods of the same description, in addition to those they had ordered, that he had delivered goods in such mode in Marblehead, at the time specified, and never had any license as a hawker and peddler; but that he had never delivered any wares, except to traders, and the regular customers of his employers, that he had never retailed any goods or sold at any dwelling-house or exposed any for sale, except as above stated, but had sold, when specially requested by the customers of his principals."

Based upon these facts, the court held:

"It seems to us that the defendant was a carrier, delivering goods to persons who had previously ordered them, but who, when the goods were brought, desired to enlarge their order, or take more than had been previously ordered, upon the same terms, in all respects, as to prices and credits. It was, in effect, a purchase of the same buyer from the same seller, of the same commodity, to a larger amount than previously ordered. It wants the essential characteristics of carrying about for sale, offering them to purchasers, fixing the prices and terms of sale, or receiving payment, and therefore these acts were not within the prohibition of the statute."

The case of Commonwealth vs. Farnum, 114 Mass. 267, involved the question whether a sewing machine agent was a peddler, and the court said:

"The fact that he occasionally delivered the sample machine to a purchaser, desirous of obtaining one immediately, cannot so change the character of his business as to bring him within the statute. Nor did the fact that he sold one attachment, and one tuck-marker, capable of being attached, render him liable; it distinctly appearing that it was not his practice to make such sales. The question is to be determined on the general character and

scope of his business; if this does not bring him within the statute, he is not liable for single sales of particular articles, such sales being exceptional, and not in the course of his ordinary employment."

Following the case of City of Pomeroy vs. Rutherford, reported in L. R. A. 1916B, p. 1291 (80 Wash. 43, 141 P. 178) there is an annotation (beginning on page 1293) under the heading "Who is a Peddler," in which numerous authorities are cited in support of the proposition that a single sale, without more, will not make one a peddler. See, also, State vs. Moorehead, 42 S. C. 211, 20 S. E. 544, 26 L. R. A. 585, 46 Am. St. Rep. 719.

In 29 C. J. p. 222, it is stated that:

"A single act of selling does not make the seller a peddler." And in support of the text numerous cases are cited.

But the defendant made more than one sale from his stock for which he had no orders. Not only that, the circumstance of his carrying along so many articles of various kinds of merchandise for which he had no orders, coupled with the fact that when he made a delivery of goods for which he had an order, he would ask if the customer wanted anything else, not necessarily of the same kind of goods, and that, when other kinds of goods were wanted, he then and there sold and delivered them, all shows an intent and purpose to sell the goods which he had in stock regardless of whether he had received any previous orders therefor.

We quote from 29 C. J. p. 222, as follows:

"But even where a small number of sales are shown, this will be sufficient to constitute peddling. And it has been held that a single act of selling constitutes peddling if it is accompanied with the intent to continue in such acts."

Commonwealth vs. Reid, 175 Mass. 325, 56 N. E. 617; State vs. Webber, 214 Mo. 272, 113 S. W. 1054, 15 Ann. Cas. 983; Keller vs. State, 123 Ala. 94, 26 So. 323; Johnston vs. State, 16 Ala. App. 425, 78 So. 419.

Counsel cite numerous authorities, including the case of Crenshaw vs. State of Arkansas, 227 U. S. 389, 33 S. Ct. 294, 57 L. Ed. 565; Id., 95 Ark. 464, 130 S. W. 569, holding that persons taking orders for goods for future delivery are not peddlers. Defendant took orders for future delivery, and, if that had been all that he did, he would not be liable for a peddler's license. But he did more than that, as the record shows. Under the facts presented, defendant was a peddler.

Counsel for defendant in oral argument and in briefs contend that the law under which this license is demanded is unconstitutional. But that question cannot be considered on appeal, for the reason that it was not raised by proper pleading either in the lower court or in this court. They filed in the lower court and again in this court an exception of no cause and no right of action, but the exception does not recite or suggest that it was based upon the theory that the law under which the license is claimed is unconstitutional. There is nothing to indicate that the question of the unconstitutionality of the act was raised or suggested in the lower court.

The district judge submitted a written opinion in which he discussed in detail the facts, but said nothing about the other point. The question was raised for the first time in this court, and then only in oral argument and in brief.

In the case of State ex rel. Curtis vs. Ross et al., 144 La. 898, at page 915, 81 So. 386, 392, the court said:

"This court will not consider a constitutional question unless it has been raised by the pleadings."

This rule has been repeatedly and consistently adhered to. Barber vs. L. R. & N. Co., 141 La. 1059, 76 So. 199, L. R. A. 1917F, 802; People's Fire Ins. Co. vs. Michel, 125 La. 55, 51 So. 66; Rausch vs. Barrere, 109 La. 563, 33 So. 602; Hughes vs. Bd. of Com'rs of Caddo Levee Dist., 108 La. 146, 32 So. 218; Bd. of Medical Ex. vs. Fowler, 50 La. Ann. 1358, 24 So. 809; State vs. Hennessey, 44 La. Ann. 805, 11 So. 39; State vs. St. Romes, 26 La. Ann. 753.

In Clarke Company, Ltd., vs. Petivan et al., 161 La. 1095, 109 So. 913, 916, counsel for defendant attacked an act of the Legislature as being unconstitutional, and the court said:

"No such defense was made in either the district court or the Court of Appeal, and is made here for the first time and only in counsel's brief. We must decline to pass upon the question so presented, since the case is only before us for review on application of the plaintiffs."

An exception of no cause and no right of action which does not recite or suggest that the unconstitutionality of an act is the basis of the plea is not sufficient to raise such issue. The unconstitutionality of a law must be specially pleaded. Counsel cite in brief the case of State vs. Winehill & Rosenthal, 147 La. 781, 86 So. 181, but that case does not set aside the rule that the unconstitutionality of a law is a special plea which must be raised by the pleadings. There the defendant filed in the district court an exception of no cause and no right of action, "averring that for the reasons specified in their plea, Act No. 206 of 1908 was unconstitutional." The district judge refused to pass on the plea, because it was filed after the case was heard, and the Supreme Court held that such exceptions, based upon the unconstitutionality of a law, might be filed at any time, even in the Supreme Court, and, when so filed, should be considered. But there, counsel averred that, "for the reasons specified in their plea," the act was unconstitutional.

For the reasons assigned, the judgment appealed from is affirmed, with all costs.