STATE ex rel. HUGGETT, Judicial Sequestrator, et al. v. MONTGOMERY, Tax Collector.

No. 16372.

Court of Appeal of Louisiana. Orleans.

March 27, 1936.

E. M. Robbert, City Atty., and Henry B. Curtis, Asst. City Atty., both of New Orleans, for appellants.

Stanley W. Ray and Rene A. Viosca, both of New Orleans, for appellee Chris Reuter, Inc.

## WESTERFIELD, Judge.

This is a mandamus proceeding in which relator seeks to compel the tax collector for the city of New Orleans to cancel the taxes assessed for the years 1931, 1933, 1934, and 1935. The suit was instituted by John W. Huggett, the judicial sequestrator of Chris Reuter, Inc., the owner of certain real estate described in the petition He alleges that on September 5, 1935, he was authorized to sell certain property on St. Claude avenue belonging to Chris Reuter, Inc., according to an order on file in the matter of "Receivership of Chris Reuter, Inc.," No. 213419 of the docket of the Civil District Court; that on November 2, 1935, pursuant to the authority thus conferred, he sold the property to the Roman Catholic Church of the Diocese of New Orleans for the sum of $4,000 by act before Charles I. Denechaud, notary public; that the tax research certificates which had been obtained in conjunction with the sale of the property disclosed the fact that the property in question had been adjudicated to the state of Louisiana for nonpayment of taxes for the year 1932 and to the city of New Orleans for city taxes for the year 1930; that relator, acting in conformity with Act No. 161 of 1934, as amended by Act No. 14 of the Fourth Extraordinary Session of 1935, redeemed the property from the state and from the city of New Orleans, obtaining the proper certificates of redemption; that notwithstanding the provisions of Act No. 161 of 1934, as amended, which entitle relator to a cancellation of all assessments for taxes, state and city, except those for the nonpayment of which adjudication had been made to the state and city respectively, which relator paid, George Montgomery, state tax collector for the city of New Orleans, declined to recognize the certificates of redemption, in so far as the assessment for city taxes were concerned, and declined to cancel and erase the tax assessments, or to issue to relator a clear tax research certificate, with the result that a substantial portion of the purchase price of the property sold by relator was withheld by Charles I. Denechaud, notary public, which should be paid to relator for the benefit

of the creditors and stockholders of Chris Reuter, Inc.

The respondent, George Montgomery, state tax collector for the city of New Orleans, answered admitting all of the essential allegations of relator, and, in explanation of the position taken by him, averred "that he was warned by the attorney for the City of New Orleans that Act No. 161 of 1934 and Act No. 14 of the Fourth Extraordinary Session of 1935, are unconstitutional, null and void; that an opinion was rendered by the Attorney General of the State of Louisiana in wich he ruled that taxes for the intervening years must be cancelled; and that in order to protect himself and his bondsmen, your respondent has refused to cancel the city taxes for the intervening years until ordered to do so by a court of proper jurisdiction."

Upon the trial of the case, Mr. Montgomery testified that he notified the city of New Orleans, the Orleans parish school board, the board of police commissioners, the board of fire commissioners, American Bank & Trust Company, National Bank of Commerce, Hibernia National Bank, Whitney National Bank, Sewerage & Water Board, and the board of liquidation of the city debt, of the pendency of the suit. None of these institutions intervened in the suit, which, after trial upon the merits, resulted in a judgment in favor of relator, as prayed for. Thereafter, and within the delays allowed for a suspensive appeal, the city of New Orleans and the Orleans parish school board, availing themselves of the provisions of article 571 of the Code of Practice by asserting an interest in the subject-matter of the suit, prosecuted a suspensive appeal to the Supreme Court of Louisiana, which appeal was subsequently transferred to this court under the authority of Act No. 19 of 1912.

In the petition of the city of New Orleans and the Orleans parish school board for a suspensive appeal it is alleged that the judgment is erroneous because based upon Act No. 161 of 1934, as amended by Act No. 14 of the Fourth Extraordinary Session of 1935, which, if interpreted as authorizing the cancellation of taxes already accrued at the date of the enactment of that statute, is unconstitutional upon the ground that it is repugnant to article 4, § 13 of the Constitution of Louisiana of 1921, which declares that the "Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishment, in whole or in part, of the indebtedness, liability or obligation of any corporation or individual to the State, or to any parish or municipal corporation thereof; provided, the heirs to confiscated property may be released from all taxes due thereon at the date of its reversion to them," and also for the reason that it contravenes article 14, § 24, of the Constitution of 1921 (as amended), and section 10, art. 1, of the Constitution of the United States, which forbids any state to "pass any * * * law impairing the Obligation of Contracts."

In this court a motion to dismiss the appeal was filed by appellee upon the following grounds:

"1. That the appellants have no right or cause of action and no legal or other interest in this controversy, and are without right to appeal from the judgment of the District Court rendered on December 20, 1935, and signed on December 27, 1935.

"2. That the appellants are creatures of the State and subdivisions and agents thereof, and have no right or standing to attack the constitutionality of Act No. 161 of 1934 and Act No. 14 of the Fourth Extra Session of 1935 on the grounds set forth in paragraphs 4 and 5 of the petition for appeal, or on any other grounds whatsoever.

"3. That the appellants have no legal interest in asserting the rights of other persons and in urging the unconstitutionality of Act No. 161 of 1934 and Act No. 14 of the Fourth Extra Session of 1935 on the grounds set forth in paragraphs 4 and 5 of the petition for appeal, or any other grounds whatsoever.

"4. That the appellants are without right to raise the said constitutional questions, or any other constitutional questions whatsoever, for the reason that neither these nor any other constitutional questions were raised or pleaded in the district court."

During the argument of the case in this court, appellants filed an exception of no cause of action based upon the alleged unconstitutionality of Act No. 161 of 1934, as amended, upon the ground that the act is repugnant to the provisions of article 4, § 13 of the Constitution of 1921.

■ The first point raised by the motion to dismiss is based upon the alleged lack of interest of appellant in the controversy. It is, we believe, sufficiently an-

150

swered by article 571 of the Code of Practice, which provides:

"The right of appeal is given, not only to those who were parties to the cause in which a judgment has been rendered against them, but also to third persons not parties to such suit, when such third persons allege that they have been aggrieved by the judgment."

The second point involves the power of the city of New Orleans and the Orleans parish school board to attack the constitutionality of an act of the Legislature. In the early case of Mayor and Council of the City of Carrollton et al. v. Board of Metropolitan Police et al., 21 La.Ann. 447, it was held that the city of Carrollton had no right to question the constitutionality of an act of the Legislature which divested it of control over the police and conferred that authority upon the board of Metropolitan police created by an act of the Legislature of 1868 (No. 74).

The case of State ex rel. Nicholls, Governor, et al. v. Shakespeare, Mayor of New Orleans, et al., 41 La.Ann. 156, 6 So. 592, 596, is authority for the proposition that officers charged with the administration of laws have no authority to resist their execution upon the ground that they contravened the Constitution. Quoting the language of the court:

"Respondents, in their return, excuse themselves, because Act No. 63 of 1888 is unconstitutional, null and void, and was enacted in violation of the constitution of 1879, and particularly of article 253 of said constitution, and it was the duty of the · mayor and council to refuse to obey and carry into execution said act. In this they have erred. A government whose laws can be ignored · by those whose duty it is to execute them is feeble, weak, and inert, and is wanting in that vigor, strength, and energy that will insure its perpetuity. The mayor and council of the city of New Orleans are the officers of a subordinate political corporation, not only charged with municipal duties, but as a constituent part of the state government they owe allegiance and obedience to their sovereign, the state of Louisiana, whose majesty, dignity, and power they must uphold, and whose mandates they must obey. They cannot defy the law, constitute themselves the judges of its constitutionality, and pronounce upon its validity, when they are charged with its execution, in advance of the judicial tribunal whose sole prerogative it is to pass upon its constitutionality. It is their duty to obey the law until the law has been declared null and void by the judicial department of the government."

About one year later, the court, in State ex rel. Board of Directors of Public Schools v. City of New Orleans, 42 La. Ann. 92, 7 So. 674, 675, without referring to the Shakespeare Case, held unequivocally and exactly the opposite to its holding in that case, as appears from the following:

"Touching this peremptory objection to the right of the city to stand in judgment, which must be determined at the threshold, it might suffice to say that, however absolute and broad the powers of the general assembly may be in · the city of New Orleans, their supremacy must be confined within certain boundaries by the state organic law, which cannot be overleaped, and that, when an attempt is made to transgress them, the city has an undoubted right to interpose impediments, and to be heard; but it is better that the matter receive attention.

"The principle is well recognized that 'where a demand is asserted against a municipality, though of a nature that the legislature would have a right to require it to incur and discharge; yet, if its legal and equitable obligation is disputed, the corporation has the right to have the dispute settled by the courts, and cannot be bound by a legislative allowance of the claim.' Cooley, Const.Lim. 232, 233.

"Indeed, were it not so, the mouth of political organizations representing the corporations would remain absolutely muzzled. The corporations would have, not only tamely to submit to and passively to allow unconstitutional legislation to be executed, but could be constrained to carry it out themselves.

"The books are full of cases in which political corporations have been recognized the privilege of setting up the unconstitutionality of law, under which some unwarrantable right against their revenue and property was sought to be enforced, and in which the legality of such defenses has been sanctioned."

Five years later the court, in State ex rel. New Orleans Canal & Banking Co. et al. v. Heard, State Auditor, et al., 47 La.Ann. 1679, at page 1696, 18 So. 746, 752, 47 L.R.A. 512, without referring to

the School Board Case, returned to the opinion which it expressed in the Shakespeare Case and especially reaffirmed the authority of that case, as appears from the following:

"After careful investigation of the authorities, we feel fully confirmed in the correctness of the conclusions we arrived at in State ex rel. Nicholls, Governor, v. Shakespeare, Mayor, and other cases, to the effect that executive officers of the state government have no authority to decline the performance of purely ministerial duties which are imposed upon them by a law, on the ground that it contravenes the constitution."

In City of Gretna v. Bailey, 141 La. 625, 626, 75 So. 491, 493, Ann.Cas.1918E, 566, the court overruled the case of Mayor and Council of the City of Carrollton v. Board of Metropolitan Police, supra, but made no reference to the subsequent cases on the subject which held otherwise. We quote the following:

"It would be an absurdity to hold that a corporation created by the legislature, with authority, to prosecute and defend suits in the courts, cannot invoke the protection afforded by the Constitution to prevent a violation of the rights granted to it. The decision cited in support of that doctrine is more of a historical incident than a proposition of law, and we feel no compunction in overruling it."

In Atchafalaya Land Company v. Dibert, Stark & Brown Cypress Co., 157 La. 689, 102 So. 871, 873, the court, in what may be regarded as obiter, said:

"We may add that in that aspect we see nothing unconstitutional about the statute; six years is, of course, more than ample time in which to question the official acts of the Governor of a state to the alleged prejudice of an equitable claimant against the state. And we mention this only because the levee board has parted with its title and hence private rights have intervened. *Were we dealing only with the rights of the levee board itself, it would suffice to say that as a mere state agency it would have no right to raise the question, since the state might flatly have recalled the grant absolutely and at once.*" (Italics ours.)

In the very recent case of State ex rel. Porterie v. Walmsley, 183 La. 139, 162 So. 826, 836, it was said: •

"Municipalities are established for public purposes alone, and by specific grant of charter rights by the Legislature are empowered to administer a part of the sovereign power of the state over such territory as the municipality may embrace. They are mere creatures of the Legislature and are entirely subject to the legislative will. Laws which establish and regulate municipal corporations are not contracts; they are ordinary acts of legislation, and the powers and authority which they confer are nothing more than mandates of the sovereign power, the state, and those laws may be repealed or altered at the will of the Legislature, except so far as the repeal may affect the rights of third persons acquired under them. Police Jury v. Shreveport, 5 La.Ann. 661, 665; Reynolds v. Baldwin, 1 La.Ann. 162; State ex rel. Hernandez v. Flanders, 24 La.Ann. 57, 61; New Orleans, M. & C. R. Co. v. New Orleans, 26 La.Ann. 478; Diamond v. Cain, 21 La.Ann. 309."

Considering the uncertainty of the jurisprudence of our Supreme Court on the subject, we feel privileged to indulge our own views, which are in favor of the affirmative of the proposition, as well expressed in the following language found in the case of City of Gretna v. Bailey, supra: •

"Of course, a municipal corporation, being a creature of the Legislature, cannot question the authority of the creator of its charter to amend the same, except in so far as the Legislature attempts to exceed its own constitutional authority. But the General Assembly is as well bound not to violate the mandates expressed in the Constitution as a corporation created by the Legislature is controlled by its statutes."

We, therefore, conclude on this point that appellants may, with legal propriety, question the validity, upon constitutional grounds, of the statute under consideration.

The next point raised by appellee in the motion to dismiss, to the effect that appellants have no legal interest in asserting the rights of other persons in attacking the constitutionality of the act of 1934, as amended, is doubtless addressed to the attack upon that statute upon the ground that it violates the appropriate sections of the Louisiana and United States Constitutions relative to the impairment of obligations of contracts (Const.La.1921, art. 4, §

15; Const.U.S. art. 1, § 10). For reasons which will appear in connection with our discussion of the fourth and last point, we will pretermit a consideration of this question at this time.

 The last ground urged by appellee is based upon the well-settled principle that the constitutionality of a statute must first be challenged in the trial court.

"Plaintiffs have fully and learnedly discussed in their brief the constitutionality of Act No. 64 of 1921 (Ex.Sess.) upon several grounds, but we are unable to consider the discussion and give effect to it, if it is entitled to effect, for the reason that plaintiffs did not raise the constitutionality of the statute, in the lower court, in their pleadings. Unless the constitutionality of a statute is raised in the trial court in a civil case, an appellate court, as is well established, cannot consider it. State ex rel. People's Fire Ins. Co. v. Michel, 125 La. 55, 51 So. 66; Saint v. Martel, 127 La. [73] 74, 53 So. 432." Succession of Fachan, 179 La. 333, 154 So. 15, 17.

See, also, Southern Amusement Co. v. Jennings, 180 La. 800, 157 So. 720; State v. Banner Cleaners & Dyers, 170 La. 76, 127 So. 370; Stubbs v. Bain, 173 La. 544, 138 So. 96; Sholars v. Davis, 13 La.App. 405, 127 So. 36.

While the rule is well recognized to the effect, as stated by counsel, there is apparently an exception where the alleged unconstitutionality is made the basis of an exception of no cause of action, which may be filed at any time, even in the appellate court, as was done in this instance. State v. Winehill & Rosenthal, 147 La. 781, 86 So. 181; Charity Hospital of Louisiana v. Axford, 14 La.App. 535, 131 So. 770. The only constitutional objection urged in the exception does not involve the question of impairment of the obligation of contracts. Consequently that issue is not before us because it was not raised below.

The final question is whether the act of 1934, as amended, violates article 4, § 13, of the State Constitution relative to the extinguishment of debts due municipalities. The law with reference to the redemption of property prior to the adoption of Act No. 161 of 1934 is found in section 62 of Act No. 85 of 1888. It permitted the owner, or other person interested, his legatee, et cetera, to redeem the property adjudicated to the state within twelve months,

"provided, no certificate of redemption shall be issued by the auditor until all taxes, State, parochial and municipal, due up to the day of redemption have been paid on said property." In the case of Gamet's Estate v. Lindner et al., 159 La. 658, 106 So. 22, 24, it was said:

"The purpose of the law in authorizing an adjudication for unpaid taxes to either taxing authority, the state or one of its subdivisions, is, primarily, to secure the taxes due on the property adjudicated without impairment of the lien of either. Such adjudication is made only in the absence of a bid sufficient in amount to pay the taxes and costs. When a third person purchases property at a sale for delinquent state taxes, he assumes the burden of discharging the parish or municipal taxes due and to become due. When the state acquires the property, the law requires the state to protect the taxes of its subdivisions, since no redemption certificate can be issued by the state until all taxes, state, parochial and municipal, due up to the day of redemption are paid."

The tax lien in favor of the state was said to be of no greater dignity than that of the municipality, as witness the following:

"Moreover, there is no intrinsic reason why the state lien should prime the lien of the municipality. Both classes of taxes are levied for the same purpose—the support of government. The municipal government is but a branch of the state government; the municipality is a part of the state; and the collection of the revenue for municipal purposes is as important to the state as the collection of the revenue for state purposes." Id.

In 1934, for reasons which it deemed sufficient, doubtless due to the prevailing economic conditions, the Legislature adopted Act No. 161, which authorized an owner or other persons interested in property adjudicated prior to the passage of the act "to redeem such adjudicated property from the State, or any of its political subdivisions, from the date of the passage of this Act, and up to and including September 30th, 1935, upon the payment in five equal annual installments of the amount of the actual taxes for which said lots or lands were adjudicated to the State, or any of its political subdivisions." This act was amended in 1935 at the Fourth Extraordinary Session of that year (No. 14) so as to extend the time in which redemption of

property might be effected as provided in the act of 1934, to "twelve o'clock noon of the twentieth day after the regular session of the Legislature of 1936 shall have adjourned." The act was otherwise amended so as to include the parish of Orleans, that parish having been excepted from the provisions of the act of 1934.

The argument advanced by the city of New Orleans is that the changes effected by Act No. 161 of 1934, as amended, accomplished the release and extinguishment of debts due it in the form of taxes, in defiance of the prohibition contained in article 4, § 13, of the Constitution of 1921, which declares that the Legislature has no power to do so.

■ The first answer to the proponents of this argument is that taxes are not debts or obligations "of any corporation or individual" to the city of New Orleans in the sense of the constitutional provision because there is no personal liability for the payment of taxes, a tax lien operating strictly in rem. Louisiana Oil Refining Co. v. Louisiana Tax Commission, 167 La. 605, 120 So. 23.

It is quite true that there is no personal liability for taxes on real property and that their collection can only be effected by proceedings against the property, and it is also true that taxes are not ordinarily considered as debts. In Morris et al. v. Lalaurie et al., 39 La.Ann. 47, 1 So. 659, 663, the court said:

"In City of Shreveport v. Gregg & Ford, 28 La.Ann. 836, it was held: 'It is correctly contended on behalf of plaintiff that taxes are *not debts* in the ordinary sense of the word, but contributions required of the citizens for the support of the government, and without which it could not be supported, and they cannot be seized, sold, or compensated.' Geren v. Gruber, 26 La. Ann. 694.

"Cooley on Taxation says:

" 'Taxes are *not debts* in the ordinary sense of the term, and their allowance will, in general, depend on the remedies which are given by statute for their enforcement. * * *

" 'Taxes are not demands against which a set-off is admissible; their assessment does not constitute a *technical* judgment; nor are they contracts between party and party, either express or implied; but they are the positive acts of the government though its various agents, binding upon the

inhabitants, and to the making and enforcing of which their personal consent individually is not required.' City of New Orleans v. Davidson, 30 La.Ann. 541 [31 Am. Rep. 228]; City of New Orleans v. Waterworks, 36 La.Ann. [432], 436."

Nevertheless, it appears to us that the framers of the Constitution used the words "debts" and "obligations," however loosely, as comprehending taxes, because we find in the concluding part of section 13 of article 4 of the Constitution the proviso that "the heirs to confiscated property may be released from all taxes due thereon at the date of its reversion to them." It appears, therefore, that the constitutional provision relative to debts and obligations was intended to include taxes.

■ We pass this point, therefore, without further comment, and take up the final question in the case. Does the act of 1934, as amended, release or extinguish an indebtedness due the city of New Orleans in the form of taxes?

This act has been considered by our Supreme Court on two occasions, in Police Jury of Parish of Jefferson Davis v. Grace, 182 La. 64, 161 So. 22, 23, and State ex rel. Violet Trapping Company v. Grace, 182 La. 405, 162 So. 26, 28. In neither instance was the statute attacked upon the grounds presently urged, but, in holding the statute to be free from constitutional taint upon other grounds, certain expressions of opinion of the court are pertinent here. For example, in the first case, Police Jury v. Grace, it was said:

"There is no limitation in the Constitution upon the authority of the Legislature to say what disposition shall be made of property adjudicated to the state for nonpayment of taxes. It was virtually so held in Gamet's Estate v. Lindner, 159 La. 658, 106 So. 22, and in St. Bernard Syndicate v. Grace, Register of State Land Office, 169 La. 666, 125 So. 848."

In the later case, State ex rel. Violet Trapping Company v. Grace, we find the following:

"No reasons are urged, or can be urged, why the state, being the owner of the property, could not sell the same and fix the price, and impose such conditions on the sale as she deemed fit and proper. There is no restriction that can be placed upon the conditions which she may impose upon the sale of her property."

Having adopted the view that taxes are debts within the meaning of the article of the Constitution relied on, it is apparent that any attempt by the Legislature to effect a release of tax debts due to the city of New Orleans by a corporation or individual would come within the ban of the constitutional provision prohibiting such release. In order, however, for a debt of any kind to exist, there must be a debtor; one who is obligated to pay the debt. Taxes which are assessed by the city or the state following the adjudication of property to one or the other taxing authority cannot be considered as debts, because taxes are due by the owner of the property, and it would be absurd to say that both the debtor and creditor of the obligation are represented in the same person or corporation. Such taxes are assessed against the property because, under the provisions of law governing the redemption of property, the payment of these charges is made a prerequisite. In other words, the state of Louisiana has declared that when it, or one of its political subdivisions, because of the failure of one of its tax debtors to pay taxes on his or its property, is obliged to take over or adjudicate the property to itself, it will permit the redemption by the owner, heir, or party interested, only upon condition that the taxes, which would have been collected by it if the property had remained in the possession of the owner, are paid. There is no legal or constitutional objection to the state imposing such conditions upon the redemption of property as it sees fit. State v. Grace, supra. Such taxes are not debts, but mere bookkeeping entries, neither the state nor the city pretending to tax its own property. In the instant case the taxes which are in controversy are those for the years 1931, 1933, 1934, and 1935. The city of New Orleans became the owner of the property by adjudication to it for the taxes for the year 1930 and the state for taxes for the year 1932.

In argument at the bar the point was made that neither the city nor the state can sell property for taxes until after the expiration of the year for which the taxes are due. It is argued that, if the city acquired the property for the taxes of 1930, the adjudication must have occurred subsequent to the 1st of January, 1931, and that, since taxes for the current year are due in advance on the 1st of January, the taxes for the year 1931 must have accrued prior to the adjudication to the state. There is nothing in the record to show the date of the adjudication of the property to either the city or the state. But the question of the effect of the statute upon taxes due prior to adjudication would not involve its constitutionality because it is fairly susceptible of the construction that the Legislature did not intend that pre-existing debts in the form of taxes due prior to adjudication were to be waived by the state or its political subdivision, from which the owner redeemed his property. Laws are presumed to be prospective and not retrospective in their effect. Moreover, it is a familiar rule of construction that where two interpretations of a statute are possible one of which will maintain its constitutionality and the other destroy it, the one upholding its constitutionality should be adopted. In Interstate Trust & Banking Co. v. Baker, 169 La. 766, 126 So. 54, 55, it was said:

"When it is considered that the acts of a Legislature are presumed to be constitutional and are only held to be otherwise when no other alternative presents itself, the courts, being actuated by a feeling of respect for a co-ordinate branch of the government and very loath to exercise their prerogative except in cases of glaring inconsistencies and repugnance to the fundamental law, it is apparent that the validity of a statute will not be inquired into except at the instance of those whose constitutional rights have been invaded. We believe this principle to be of such sound public policy that our inclination is to extend, rather than restrict, its application."

Since the first adjudication was not made prior to January 1, 1931, the only taxes which were necessarily due at that time were those for 1931, and as to those it was conceded in argument that they were no longer in controversy. However that may be, the act does not apply to taxes due prior to the adjudication to the state or city.

Our conclusion is that Act No. 161 of 1934, as amended by Act No. 14 of the Fourth Extra Session of 1935, is constitutional.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.