(38 South. 613.)

No. 15,381.

LOUISIANA NAVIGATION & FISHERIES CO., Limited, v. DOULLUT et al.

(Jan. 16, 1905. On Rehearing, May 22, 1905.)

EMINENT DOMAIN—EXERCISE OF POWER.

1. A corporation including a purpose of purely private business among the purposes of its organization cannot exercise the power of eminent domain.

2. It makes no difference that such corporation was organized prior to the passage of Act 120 of 1904, which legalizes all corporations theretofore formed on the multifarious plan.

On Rehearing.

3. A corporation created under the general laws providing for the organization of corporations for works of public improvement and utility may be constituted for any number of the conjunctive purposes permitted to corporations belonging to that class. The same rule applies to other classes of corporations.

4. Where an act validating the charters of corporations irregularly organized was passed after judgment in the court below, the case will be remanded, in order that all questions relative to the legal effect and constitutionality of such act may be properly raised and determined in accordance with the rules of practice.

(Syllabus by the Court.)

Appeal from Twenty-Ninth Judicial District Court, Parish of Plaquemines; Albert Estopinal, Jr., Judge.

Action by the Louisiana Navigation & Fisheries Company, Limited, against Milton P. Doullut and others. Judgment for defendants, and plaintiff appeals. Affirmed.

John Dymond, Jr., for appellant. Alvin Edward Hebert, for appellee Milton P. Doullut. James Wilkinson, for appellees Haspel & Davis and H. C. Huntington. A. E. & O. S. Livandais, for appellees Louisa Smith et al. Denègre & Blair, Farrar, Jonas & Kruttschnitt, Howe, Spencer & Cocke, Harry Hinckley Hall, Dufour & Dufour, Wise,

Randolph & Rendall, Alexander & Wilkinson, Stubbs & Russell, Hudson, Potts & Bernstein, Percy Sandel, E. Tyler Lamkin, Pujo & Moss, Hampden Story, Thomas J. Kernan, and Laycock & Beale, amici curiæ, on application for a rehearing.

PROVOSTY, J. This is an expropriation suit. The plaintiff corporation is organized under the general laws of this state permitting corporations to be formed by notarial act. The purposes of plaintiff's organization are stated in its charter as follows:

"The objects and purposes of this corporation and the nature of the business to be carried on by it are hereby declared to be, to construct or acquire, own and operate navigation canals, bridges, locks, dredges, railways, tramways, telephone and telegraph lines, sailing, steam or motive power vessels, ship-yards, ways, canal and railway terminals, wharves, sheds and warehouses, necessary therefor; to acquire by lease or otherwise and to own and utilize oyster bottoms in the waters of the state of Louisiana or elsewhere, and to plant, raise and cultivate oysters and other shell fish thereon; to establish or acquire, own and operate canning and preserving factories; to manufacture ice or any packages, articles or materials used in connection with the business of the company; to acquire, own and utilize any franchise, privilege or advantages in connection with its business; to obtain from the proper constituted authorities of this or other states; to acquire from the stockholders of the Bayou Cook Company, Limited."

Some of the purposes thus stated in plaintiff's charter are of public utility, in aid of which the power of eminent domain may be exercised; the others are of purely private business; and the question which arises is whether, under the circumstances, plaintiff may exercise the power of eminent domain.

Plaintiff is the successor of the Bayou Cook Navigation & Fisheries Company, Limited. In the case reported at page 518 of 111 La., and page 729 of 35 South., wherein that corporation was seeking to expropriate the same land from the same defendant, and wherein the same defense was urged of the illegality of the organization of the plaintiff because of illegal multifariousness in the purposes of its organization, this court, ar-

guendo, expressed a doubt whether, in forming a corporation under our enabling laws, it was permissible to assign to it more than one purpose. Since that decision was handed down, and, it is said, because of the doubt thus expressed, the Legislature has passed the two following acts:

### Act No. 120 of 1904.

#### "An Act

"Recognizing the validity of the corporations heretofore attempted to be formed under the laws of this state; and providing that the validity of their acts and contracts shall be the 'same as if said corporations had been always valid.

"Section 1. Be it enacted by the General Assembly of the state of Louisiana, that whenever persons have undertaken to form a corporation under any of the existing laws of this state, and have executed, recorded in the mortgage office, and published their charters, the corporations so formed and subsequently doing business as corporations are hereby recognized and declared to be now and hereafter, for the term stated in their charter, valid corporations, notwithstanding that the charters may have authorized the carrying on by one corporation of several branches of business, the carrying on of which by corporations is authorized by different statutes of this state, and notwithstanding irregularities in the proceedings and instruments of the corporation.

"Sec. 2. Be it further enacted," etc., "that the validity of all contracts made and acts generally by said corporations, and the liabilities of shareholders therein, shall be in all respects the same as if the corporations had been regular and valid from the beginning."

### Act 78 of 1904.

#### "An Act

"Providing for the formation of corporations in this state to carry on any lawful business, except the business of insurance or banking, and corporations entitled to exercise the power of eminent domain:

"Section 1. Be it enacted by the General Assembly of the state of Louisiana, that any three or more persons may, on otherwise complying with the requirements of the laws of this state, form corporations to carry on under any name given in the charter any business specified in the charter that it would be lawful for any individual to carry on; that the charters of such corporations may provide that the corporations shall carry on any named business or different branches of business, whether related or not, provided such corporation shall have a subscribed capital of not less than three thousand dollars.

"Sec. 2. Be it further enacted," etc., "that wherever parties have attempted to form a

corporation and have executed, recorded and published the charter, all contracts made and acts done by such corporation shall be treated as the contracts and acts of valid corporations so far as affects the rights and obligations of the corporation and its shareholders, reserving, however, to the state, the right to take such proceedings as may be authorized by law, to enjoin or dissolve the said corporation, if informal, or to compel the compliance by them with the requirements of the law in the formation of corporations.

"Sec. 3. Be it further enacted," etc., "that the provisions of this act shall not apply to the formation of corporations for conducting insurance or banking business, nor to the formation of corporations designed to carry on any business which shall entitle the corporation designed to exercise the power of eminent domain.

"Sec. 4. Be it further enacted," etc., "that all laws and parts of laws in conflict with this act are hereby repealed."

The first of these acts retrospectively validates all corporations theretofore formed on the multifarious plan, thereby impliedly holding them to have been illegal.

The second authorizes such multifariousness of purpose in future, but adds the express proviso that in this cumulation of purposes there shall not be included any in aid of which the power of eminent domain is permitted to be exercised.

Under the provisions of the latter statute a corporation sought to be formed on the multifarious plan not only cannot exercise the power of eminent domain, but is illegally organized, and fails even of attaining existence. But the organization of plaintiff antedates that act, and the contention is that it has been legalized by the other of the two acts, and that plaintiff being a legally organized corporation for purposes of public utility, it is qualified to exercise the eminent domain power.

We do not agree with that contention. We think that the privilege of exercising that high prerogative power is extended only exceptionally, and that the favored corporation must qualify strictly within the exception, and that it does not so qualify if it is organized also for purposes purely private. Such a corporation might, on the pre-

tense of subserving the public purposes of its organization, exercise the sovereign power of eminent domain in aid of its purely private business; and thus perpetrate the enormity of forcibly divesting one citizen of his property for the benefit of the private business of another, and the courts be powerless to hinder, nay, be made instruments of, the crime. The contention of defendant is that such is the scheme of the present case. We have not looked into the facts to ascertain how far the allegation is justified.

Reading the above two acts together as one legislative utterance—and they must be so read; they were introduced in the Legislature together, ran before that body together, and were approved by the executive together—their meaning is that corporations formed on the multifarious plan had theretofore been illegal, and should thereafter be illegal, if there should be included within the several purposes of their organization any purpose in aid of which it would be possible to exercise the power of eminent domain. Thus the Legislature refuses to sanction the exercise of the power of eminent domain by a corporation formed in part for business of a purely private nature.

The first of these two acts declares that corporations theretofore formed on the multifarious plan shall have the status of corporations, and their acts and contracts shall be valid; but it does not say that such corporations shall be privileged to exercise the power of eminent domain. Read together, the two acts in express terms refuse such privilege. Surely the Legislature has not stultified itself to the extent of saying, "I forbid corporations hereafter legally organized on the multifarious plan to exercise the power of eminent domain; but I allow corporations heretofore illegally organized on that same plan to exercise that power."

The motive underlying that prohibition can have been no other than the fear on the part of the Legislature that corporations would

utilize for their private business this sovereign power, which the Constitution declares shall be exercised only for public purposes; and that motive operates just as strongly in the case of corporations theretofore sought to be organized as it does in the case of corporations thereafter sought to be organized. It is no answer to say that the corporations will not be guilty of thus perverting and abusing this power. The evident idea of the Legislature was not to afford them a chance to do it.

Under our laws private individuals cannot exercise the power of eminent domain. Only the "state" can do so, "or any political corporation of the same, created for the purpose of exercising any portion of the governmental power of the same, or the board of administrators of the Charity Hospital, or any board of public school directors thereof, or any corporation constituted under the laws of this state for the construction of a railroad, plank road, turnpike road, a canal for navigation, or for the purpose of transmitting intelligence by magnetic telegraph." Act No. 96, p. 142, of 1896, § 1. We do not think it would be a reasonable construction to hold that the same sovereign which has refused to accord to the natural person the use of the power of eminent domain has consented to accord it to an artificial person, qualified like the natural person to engage in business of a purely private character.

"So high a prerogative as that of divesting one's estate against his will should only be exercised where the plain letter of the law permits it." Cooley, Const. Lim. p. 651, 6th Ed.

There is not in this case such "plain letter."

Judgment affirmed.

### On Rehearing.

LAND, J. The argument on the rehearing of this cause has been participated in by a number of leading members of the bar, who appeared as amici curiæ, and to whom we are indebted for their very able and luminous exposition of the corporation laws of this state.

Certain expressions in our former opinion relative to multifarious corporations seem to have aroused the fears of such institutions throughout the state as to their legal status. These expressions were used arguendo, and should not be considered as authoritative.

We feel no hesitation in stating that a corporation organized under Act No. 176, p. 129, of 1852, and its amendments down to and including Act No. 154, p. 288, of 1902, may be constituted for any number of the purposes authorized conjunctively by such statutes. The same may be said of Act No. 36, p. 27, of 1888, authorizing the formation of "limited" corporations.

In Bayou Cook Navigation & Fisheries Company v. Doullut, 111 La. 518, 35 South. 729, we held that two separate and distinct classes of corporations authorized under different and conflicting statutes could not be blended in one act of incorporation. We see no reason to doubt the correctness of that decision.

But by Act No. 120 of 1904 the Legislature undertook to validate the charters, acts, and contracts of corporations organized for the purpose of carrying on several branches of business authorized by different statutes, and which the existing laws contemplated should be carried on under different acts of incorporation.

On the original hearing we held that said act validated the incorporation of plaintiff corporation, but did not confer on it the power of eminent domain.

This act was passed after the rendition of judgment in the court below, and consequently it was not pleaded by plaintiff in aid of its incorporation, and defendants had no opportunity of assailing the act on the ground of its unconstitutionality.

Under the circumstances we deem it best to remand the case for further proceedings,

in order that all questions relative to the legal effect and constitutionality of said confirmatory act may be raised and determined in accordance with the rules of practice.

It is therefore ordered that the judgment appealed from be reversed, and that this case be remanded for further proceedings according to law.

BREAUX, C. J., concurs in the decree.