(51 South. 66.)

No. 17,921.

STATE ex rel. PEOPLE'S FIRE INS. CO. OF NEW ORLEANS. v. MICHEL, Secretary of State.

(Nov. 29, 1909. Rehearing Denied Jan. 17, 1910.)

*(Syllabus by the Court.)*

1. REQUIREMENTS AS TO INSURANCE COMPANIES.

Insurance companies organized on the stock plan are required, under section 3 of Act No. 105, p. 132, of 1898, as amended by Act No. 50, p. 69, of 1902, to have a subscribed capital stock of at least $100,000, all of which must be paid for in cash within 12 months of the date of the charter, under penalty of the revocation of the licenses to do business and of the forfeiture of the charter of the offending company.

2. INSURANCE (§ 33*) — STOCK COMPANIES — PAID-IN STOCK—STATUTORY REQUIREMENTS.

A fire insurance company incorporated under the said section, with an authorized capital stock of $100,000, one-fourth of which has never been paid in cash, but is represented by the notes of subscribers, has no standing as a corporation to do business, or to enjoin the Secretary of State from revoking its license.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 33.*]

3. CONSTITUTIONAL LAW (§ 43*) — PERSONS ENTITLED TO RAISE CONSTITUTIONAL QUESTIONS—RIGHT OF INSURANCE COMPANY TO ATTACK LAW UNDER WHICH IT IS INCORPORATED.

A fire insurance company incorporated under the section aforesaid has no standing to attack as unconstitutional the law under which it claims to exist as a corporation, and, if it has not been organized as required by the statute, it has no standing to complain of alleged unconstitutional discriminations in favor of other classes of insurance companies.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 41; Dec. Dig. § 43.*]

4. APPEAL AND ERROR (§ 170*) — REVIEW— QUESTIONS NOT RAISED IN LOWER COURT.

Questions of unconstitutionality, not pleaded below, will not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1037, 1038; Dec. Dig. § 170.*]

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Mandamus by the State, on the relation of the People's Fire Insurance Company of New Orleans, against John T. Michel, Secretary of State. Judgment for defendant, and relator appeals. Affirmed.

Meyer S. Dreifus and A. C. O'Donnell, for appellant. Walter Guion, Atty. Gen., Eugene J. McGivney, and R. G. Pleasant, for appellee.

LAND, J. Act No. 105, p. 132, of 1898, provided for the organization and operation of state insurance companies of all kinds. By section 3 companies formed upon the stock plan, for fire insurance, were required to have a paid-up cash capital of not less than $200,000. Section 5 provided that the capital stock of any stock insurance company thereafter organized shall be paid in cash within 12 months from the date of its charter, and no certificates of full shares and no policies shall be issued until the whole capital is paid in. Under this system no company could obtain a certificate from the Secretary of State authorizing it to issue policies and make contracts of insurance ex-

cept on the sworn statement of a majority of the directors that all the capital stock had been paid by the shareholders.

By Act No. 50, p. 69, of 1902, section 3 of Act 105 of 1898 was so amended as to reduce the minimum capital stock required of fire insurance companies to $100,000, and a new paragraph was added, as follows, to wit:

"That the capital stock of all such corporations shall be subscribed and paid for in cash, within twelve months from the date of its charter, and no certificates of stock shall be issued until paid for in full. and no policies of insurance shall be issued by said corporations, or business done by them until thirty-five per cent. of the entire capital shall be paid for in cash; and if the whole of said capital stock shall not be paid for in twelve months from the date of the charter, it shall be the duty of the Secretary of State to immediately revoke the license granted or issued to any such corporation to do business in this state and publish notice of such revocation as required by law, the charter of the offending corporation shall be forfeited, and all contracts of insurance entered into after the revocation of such license shall be null and void."

Section 5 was amended so as to permit such companies to issue policies and transact business when 35 per cent. of the entire capital had been paid for in cash.

The People's Fire Insurance Company was incorporated on April 2, 1907, under the laws "relative to the organization and operation of state insurance companies in particular," with an authorized capital stock of $100,000. The total amount was subscribed, and, after $35,000 had been paid in, the company obtained a certificate from the Secretary of State authorizing the corporation to issue policies and transact business under its charter. The company began business on July 26, 1907.

It is conceded that the capital stock of $100,000 was not all paid in by the subscribers within the year following the date of the charter, and that the deficit amounted to $24,561.50.

On October 3, 1908, the Secretary of State notified the company that he would revoke its license and authority to do business if the capital stock should not be fully paid up by October 18, 1908.

On October 15, 1908, the relator instituted the present suit for a mandamus to compel the Secretary of State to issue a certificate to relator permitting it to do business in the state, and for an injunction to restrain that officer from interfering with the business of the company as conducted by the relator.

The court ordered an alternative writ of mandamus to issue, and a writ of injunction as prayed for.

The Secretary of State answered that relator had not complied with the requirements of the statutes, and that it was the mandatory duty of the respondent to revoke its license to do business in the state.

There was judgment in favor of the defendant, and the relator has appealed.

The petitioner admits that the whole of its capital stock has not been paid in, as required by Act No. 105 of 1898, and Act No. 50 of 1902, but relator alleges that such requirement is unconstitutional on several grounds.

The first ground is that such requirement or restriction is not set forth in the title of the statutes.

The title of Act No. 105 of 1898 is most comprehensive, covering more than a page of printed matter. The general object of the statute is set forth as follows:

"In relation to the organization and operation of state insurance companies, and of insurance companies organized under the laws of other states or countries."

And the title embraces, among other recitals, the following:

"To regulate generally fire, river, inland navigation or transportation or marine insurance, how local mutual and stock companies may be formed, the provisions to be included in their charter, amount of capital stock required, * * * duties of Secretary of State," etc., etc.

Act No. 50 of 1902 amended and re-enacted sections 1, 3, 5, and 7 of Act No. 105 of 1898, giving the title of the latter in full. It was not necessary for the lawmaker to set forth

in the title a synopsis of all the provisions of the statute. It sufficed to state the general object or purpose of the proposed legislation.

The relator was organized under the provisions of the amendatory act of 1902. It is not legally possible for relator to claim the benefits of the statute and at the same time to ignore the express conditions attached to the grant of its franchise. If the conditions be unconstitutional, the whole enactment is null and void, because the grant and the conditions are inseparable.

The relator was not and could not have been organized under Act No. 105, of 1898, because it has not a paid-in capital stock of $200,000. Relator's existence as a corporation, therefore, depends on the constitutionality of the law under which it was created.

The only other ground of alleged unconstitutionality is that:

"The said act violates section 1 of the fourteenth amendment of the Constitution of the United States, in that equal rights of operation in this state are not given local and foreign insurance companies; foreign companies being empowered to do business without paid-up capital stock."

As the second paragraph of section 2 of article 2, p. 143, of Act No. 105, of 1898 requires every foreign insurance company to show "that it has, if a stock company, a fully paid-up and unimpaired capital, exclusive of stockholders' obligations of any description, of an amount not less than is required of similar companies formed under the provisions of article 1 of this act," and as by section 3 of article 2, a deposit of $200,000, is required of every foreign insurance company before it is admitted to do business in this state, we cannot perceive wherein the statute discriminates against local insurance companies, as is alleged by relator.

Other grounds of unconstitutionality have been urged for the first time in this court.

In Scovell v. St. Louis Southwestern Co., 114 La. 847, 38 South. 582, we said:

"Under the jurisprudence questions of unconstitutionality should always be presented before the court of original jurisdiction."

See, also, Louisiana Navigation & Fisheries Co. v. Doullut, 114 La. 906, 38 South. 613; State v. Hennessey, 44 La. Ann. 805, 11 South. 39; State v. Deffes, 44 La. 581; State v. St. Romes, 26 La. Ann. 754.

But if relator has not been organized in accordance with the law authorizing its creation, it has no standing as a corporation to attack the statute on the ground of unconstitutional discriminations in favor of other classes of insurance companies. It is also obvious that relator cannot assail as null and void the particular provisions of the statute under which it was incorporated, without at the same time challenging its own right of legal existence. As relator has failed to comply with the requirements of the statute relative to the formation of fire insurance companies on the stock plan, it has incurred the penalty of revocation and forfeiture denounced by the lawmaker.

Judgment affirmed.