REGAN, Judge
(dissenting).
After a careful analysis of the majority opinion of this court, I am compelled to respectfully dissent therefrom.
My conclusion is that the problem raised by the plea of unconstitutionality filed for the first time in this Court is the proper subject matter for a new suit and not the resuscitation of the present one by virtue of remanding it to the district court.
I am also compelled to dissent because the rationalization employed by the majority opinion in reaching its conclusion leads only to several legal dilemmas, which do violence to fundamental principles of law immaculately conceived in the philosophy of American jurisprudence. In the long and illustrious history of American jurisprudence — over one hundred and fifty years— I have, individually, been unable to discover the existence of an analogous case, which per se had been remanded by an appellate tribunal to be re-tried by the lower court pn a pure, simple and unadulterated question of law, which law, was not retroactive, and did not exist when the cause of action arose, when the suit was filed, August 31st, 1950, when the case was tried, September 11th, 1950, when judgment of the lower court was read, rendered and signed, September 22nd, 1950, when the case was appealed to this Court, September 26th, 1950, argued by the respective litigants and submitted to this court for decision, November 13th, 1950, and which did not become the law of the realm until November 18th, 1950, or five days after the Court of Appeal had taken the matter under advisement.
The principle involved becomes perfectly obvious when considered through the medium of reiteration — on August 31st, 1950 both litigants maintained that they were in possession of certain rights by virtue of Act No. 23 of the Second Extra Session of 1950 and, on September 22nd, 1950, the court below adjudicated the issue in favor of the defendants based on the existing law. On November 18th, 1950, another law emerges into existence which, in the final analysis, may or may not effect the rights of the litigants under the old law. The. Court of Appeal, without passing on the correctness or error of the judgment of the lower court which adjudicated those rights based on the existing law, now remands the case to be tried in conformity with a law which did not exist at any stage o'f the proceedings, as I have pointed out hereinabove.
The rule of law in support of the conclusion contained in the second paragraph hereof, and which is intended to circumvent, nay, prohibit, the course of action pursued in the majority .opinion of this Court resulting in the remand of this matter, is so well established as an academic legal principle that it hardly needs repetition and citation here.
Counsel for plaintiff concede that on November 13th, 1950, when they filed this special plea in this Court attacking the constitutionality of Act No. 23 of the Second Extra Session of 1950, the constitutional amendment, Article 14, § 22, Act No. 551 of 1950, had not as yet been promulgated and, therefore, not the law of the State of Louisiana, but I shall concede, arguendo, for the purpose of strengthen *443 ing plaintiff’s position in this court, that this constitutional amendment was the.law and plaintiff had raised, by this special plea, the unconstitutionality of Act No. 23 of the Second Extra Session of 1950, which counsel for plaintiff contended is rendered unconstitutional toy virtue of Act No. 551 of 1950, initially or for the first time in this court, it could not even be considered by us.
In Causey v. Opelousas-St. Landry Securities Co., 192 La. 677, 188 So. 739, 742, the late Judge Wynne Rogers as the organ of the court, stated: “As far back as the case of State v. St. Romes, 26 La.Ann. 753, this Court held that the. constitutionality of a law would not he considered where an issue to that effect has not been raised in the court below. In Allopathic State Board of Medical Examiners v. Fowler, 50 La.Ann. 1358, 24 So. 809, it was held that the same rule applies to cases where special grounds of unconstiftHionality are set up for the first time in this Court. And the rule has been approved and followed by this Court in a number of other decisions, among which may be mentioned the recent cases of State v. Banner Cleaners & Dyers, 170 La. 76, 127 So. 370; Succession of Fachan, 179 La. 333, 154 So. 15; Southern Amusement Co. v. City of Jennings, 180 La. 800, 157 So. 720.” (Italics ours.)
In Southern Enterprises v. Foster, 203 La. 133, 13 So.2d 491, 492, the Supreme Court, through the late Judge Rogers, stated:
“This matter is brought here on a writ of review to determine the correctness of a judgment of the Court of Appeal * *
»}* sfc
“Relator in his brief complains that the Court of Appeal erred in deciding the case under the provisions of Act 178 of 1936, because that act is unconstitutional. The constitutionality of the statute was not questioned in the Court of Appeal, nor was it questioned or adjudicated upon in the district court. Relator’s complaint, made for the first time in his brief filed in .this Court, can not be considered. Causey v. Opelousas-St. Landry Securities Co., 192 La. 677, 188 So. 739; Batts v. Marthaville Mercantile Co., 193 La. 1072, 192 So. 721.”
I emphasize that these cases hold that the plea of unconstitutionality raised for the first time in the Appellate Court could not even be considered — by the appellate court — and, therefore, it is an obvious conclusion that if this court could, not consider a plea of unconstitutionality raised initially or for the first time in the Court of Appeal' — it could not use such a-plea.as the only basis upon which to remand the matter to the lower court.
To sustain , its action and fortify its conclusion in remanding this case to the lower court, the majority opinion principally, relies upon the case of Louisiana Navigation & Fisheries Company v. Doullut, et al., 114 La. 906, 38 So. 613, 616 and Article 906 of the Code of Practice. I concede that the Supreme Court in that case said on rehearing:
“This act" (No. 120 of 1904) was passed after the rendition Of judgment in the court below, and’consequently it was not pleaded by plaintiff in aid of its incorporation, arid defendants had no opportunity of assailing the act on the ground of its unconstitutionality. ' ■ •
“Under the circumstances we deem it best to remand the case for further proceedings, in order that all questions relative to the 'legal effect and constitutionality of said confirmatory'act may be raised" and determined in accordance with the rules of practice.” (Italics ours.)
However, in my opinion, a careful reading of that case will indicate, that-it is not authority for the theorem, that a special plea, which raises the question of the unconstitutionality of a statute, initially in an appellate court, may be considered by the appellate court, and then' made the exclusive basis for remanding the case to the court a qua.
The ratio decidendi of the Doullut case is simply that Act No. 120 of 1904 validated or legalized the charter of the plaintiff corporation, but did not confer upon it the power of. eminent domain. That case was an expropriation . suit. Plaintiff corporation was organized under the general laws of Louisiana permitting corporations to be formed by notarial act. Some of the *444 purposes and objects of incorporation stated in plaintiff’s charter were in the nature of public utility, in aid of which, the power of eminent domain could be exercised; the others are of a nature which pertains to purely private business. The plaintiff was the successor of the Bayou Cook Navigation & Fisheries Company, Ltd., and in a case reported in 111 La. 517, 518, 35 So. 729, wherein that corportion was seeking to expropriate the same land from the same defendants and wherein the same defense was urged relative to the illegality of the organization of the plaintiff corporation because of the multifariousness in the purposes of its organization, the Supreme Court, “arguendo, expressed a doubt whether in forming a corporation under [the laws of Louisiana], it was permissible to assign to it more than one- purpose. Since that- decision was handed down, and, it is said, because of the doubt thus expressed, the Legislature has passed the two following acts”:
Act No. 120 of 1904 recognizes the valid-: ity of the .corporations heretofore formed under the laws of this State- and provides that the validity of their acts and contracts shall be the same as if said corporations had always been valid.
A-ct No. 78 of 1904 provides “for the formation of corporations in this State to carry on any lawful business, except the business of insurance of hanking and corporations entitled to exercise the power of eminent domain * *
“The first of these acts retrospectively validates all corporations theretofore formed on the multifarious plan, thereby impliedly holding them to have been illegal.
“The second authorizes such multifariousness of purpose in the future, but adds the express proviso that in this cumulation of purposes there shall not be included any in aid of which the power of eminent do-main is permitted to be exercised.”
The Court found that “the question which arises is whether, under the circumstances, plaintiff may exercise the power of eminent domain.” ■ ■ ' ■
The Court stated that thé plaintiff contended that it had been legalized by the foregoing acts and that, therefore being á legally authorized corporation for the purpose of public utility, it was qualified to exercise the power of eminent domain.
The opinion of the Court then stated that “under our laws private individuals cannot exercise the .power of eminent domain. Only the ‘state’ can do so, ‘or any political corporation of the same, * *
On rehearing this case was participated in by a number of the leading members of the bar from throughout the State of Louisiana, who appeared as amicus curiae ¡because, the -court said, “certain expressions in our former opinion relative to multifarious corporations seem to have aroused the fears of such institutions throughout the state as to their legal status.”
In arriving at its conclusion on rehearing, the Court stated:
“But by Act No. 120 of 1904 the Legislature undertook to validate the. charters, acts, and contracts of corporations organized for the purpose of carrying on several branches of business authorized by different statutes, and which the existing laws contemplated should be carried on under different acts of■ incorporation.
“On the original hearing we held that said act validated the incorporation of plaintiff corporation, but did not confer on it the power of eminent domain.
“This act was passed after the rendition of judgment in the court below, and consequently it was not pleaded by plaintiff in aid of its incorporation, and defendants had no opportunity of assailing the act on the ground of its unconstitutionally.
“Under the -circumstances we deem it best ‘ to remand the case for further proceedings, in order that all questions relative to the legal effect and constitutionality of said confirmatory act may be raised and determined in accordance'with the rules of practice.”
This case is readily distinguishable from the case at bar for three reasons, the first of which is Act No. 120 of 1904 retrospectively; by virtue of the plain intention of the Legislature, as is evidenced by the unambiguous language contained in the Act, *445 validates all corporations formed prior to that act on the multifarious plan. It is obvious that the Legislature had recognized that the previous existence of these corporations had been illegal and, therefore, fully intended by virtue of Act No. 120 of 1904 and Act No. 78 of 1904 to validate or legalize the charters of these corporations and thus protect the vested interests, acts and contracts of said corporations.
In the case before us counsel for plaintiff, the City of New Orleans, concede in their supplemental brief filed herein “we do not intend to argue that this statute is retroactive.”
The second distinguishing characteristic is that it is also perfectly obvious, by virtue of the language used by the Court that “on rehearing this cause has -been participated in by a number of leading members of the bar (from throughout the State) who appeared as amicus curiae * * *” because of “certain expressions in ,our former opinion relative to multifarious corporations seem to have aroused the fears of such institutions throughout the state as to their legal status”, that this case had assumed the magnitude of affecting the economic general well-being and general welfare of innumerable stockholders of many corporations and those business interests which dealt with those corporations throughout the State of Louisiana, as is evidenced by the names of the leading counsel who emanated from the four corners of Louisiana and who appeared as amicus curiae, and the Supreme Court, in order to allay the fears of these corporations which had been aroused by virtue of their former opinion, decided that “under the circumstances we deem it best to remand the case for further proceedings, in order that all questions relative to the legal effect and constitutionality of said confirmatory act may be raised and determined in accordance with the rules of practice.”
The third distinguishing characteristic is that, the quotation from the Doullut case, which appears, supra, and in the majority opinion of this Court, was .taken from the opinion of the Supreme Court in that case on rehearing and it will be noted that the remand occurred only after the merits of the case had been considered in the original opinion of the Court.
It is, therefore, my opinion that this case is not analogous or apposite nor is it authority, as the majority opinion contends, for the remanding of the instant case to the district court.
The majority opinion states that “the right to remand in such a situation seems to be established by Article 906 of our Code of Practice which provides that an appellate court may remand a case whenever, in its discretion, it deems that the ends of justice require a rémand.”
I must disagree with the contention of the majority opinion with respect to the provisions of Article 906. This article reads as follows: “Reversing and remanding case.. — But if the court shall think it not possible to pronounce definitively on the cause, in the state in which it is, either because the parties have failed to adduce the necessary testimony, or because the inferior court refused to receive it, or otherwise, it may, according to circumstances, remand the cause to the lower court, with instructions as to the testimony which it shall receive, to the end that it may decide according to law.”
The interpretation of this article by the jurisprudence of this State is to the effect that the question of remanding a case is addressed to the discretion of the appellate court and a remand should be granted when the circumstances of the case on the merits discloses that additional evidence may promote the administration of justice.
I have examined innumerable cases which have been remanded by an appellate court to the lower court with instructions as to the testimony which it shall, receive, but in none of these, with the exception of the case relied upon by the majority opinion, (and I think I have distinguished it from the instant case) have I been able to discover where an appellate court remanded a case to the lower court on a pure and unadulterated question, of law. In my opinion the rhetorical construction together with the language used in Article 906 *446 of the Code of Practice is very specific on this point. The article states in part “remanding the cause to the lower court, with instructions as to the testimony which it shall receive” which obviously means that the court, a qua, shall endeavor to procure the additional facts which the appellate court deems essential and necessary. to reach a decision founded on justice. This conclusion is sustained, as I have said, by the innumerable decisions of both the Supreme Court and Courts of Appeal of this State in their reasons for remanding a case.
Furthermore the majority opinion makes no analysis of the judgment of the court, a qua, or of the merits of the case which, in my opinion, must be made before the case can, in any event, be remanded, since remanding the case requires the setting aside or the reversal of the judgment of the lower court and this cannot be done without first considering whatever evidence is already in the record. See 19 T.L.R. 305. If there is sufficient evidence in the record to sustain the judgment which was rendered, a remand should hot be ordered. See Bayou Rapides Lumber Co. v. Campbell, 215 La. 849, 41 So.2d 781; Fogleman v. Interurban Transportation Company, 192 La. 115, 187 So. 73. See, also, State ex rel. Holcombe v. City of Lake Charles, 175 La. 803, 144 So. 502, wherein the Supreme Court, with Chief Justice O’Neill as the organ of the Court, refused to remand a case on a question of law.
The majority opinion states “another reason which leads us to the belief that the matter should be remanded is that the jurisdiction of this Court will depend upon the decision rendered in the court below on the plea of unconstitutionality. Where it is contended that a statute of the State is unconstitutional, this Court has jurisdiction of the appeal only where the constitutionality is upheld.” In other words, the majority opinion states that our judisdiction to hear this matter on appeal is contingent upon the judgment of the trial court, to-w'it: if the judge should hold that Act No. 23 of the Second Extra Session of 1950 is unconstitutional in view of the passage of Act No. 551 of 1950, now an amendment to the Constitution, then the Supreme Court has appellate jurisdiction, alterna^ tively, if the trial judge holds that Act No. 23 of the Second Extra Session of 1950 is constitutional then this court has appellate jurisdiction. This is absolutely correct, but the hypothesis leads me to. a conclusion which is diametrically opposed to that entertained by the majority opinion, in that under the authority of Code of Practice Article 906 this court remands the instant case to the lower court with instructions that it will permit the introduction into the record of the plea that Act No. 23 of the Second Extra Session of 1950 is now rendered unconstitutional by the passage of Act No. 551 of 1950, now a constitutional amendment, when this Court is fully cognizant of the fact that it may ultimately lack jurisdiction to again hear the matter once the court a qua renders its decision.
The very nature of the word “remanded” (by the appellate court) together with the history of our procedural jurisprudence implies reciprocal supervision, and by the same token, that at some future time the appellate court shall again possess the jurisdiction or'authority to determine if its instructions have been executed by the lower court, and if so, to decide the matter in conformity’ with the facts developed' by the lower court on remand.
It is apparent that this result creates an arialomous situation, to use an analogy, of the “master instructing the servant” when, in truth and the final analysis, the master is without authority to instruct the servant. The foregoing is only an additional .reason, in my opinion, to indicate that the majority opinion has erred in. remanding this matter, and that the judgment of the lower court should have beén affirmed or reversed on the record before us.
The rationalization employed by the majority opinion in reaching its conclusion that a plea of unconstitutionality is synonymous to an exception óf no right or cause of action leads, in my opinion, only to several legal dilemmas which do violence to fundamental principles of law conceived in the philosophy of American jurisprudence, and this is exemplified by virtue of the *447 following' language contained in the majority opinion — “while it is true that in the plea filed with us, in which the City of New Orleans challenges the constitutionality of Act No. 23 of the Second Extraordinary Session of 1950, there is no specific exception of no cause of action or no right of action, still it cannot be disputed that the upholding of that plea would effect a complete destruction of all rights claimed -by the defendants, since they concede that their only rights arise out of Act No. 23 of the Second Extraordinary Session of 1950, upon which they rely. We, therefore, conclude that the plea of unconstitutionality amounts to a charge that the defendants are completely without a right of action or a cause of action. * ' * * We, therefore, think that the plea is such a one as may be filed at, any stage of a litigated matter, even on appeal, and, in fact, even on application for rehearing in the appellate court. Veasey v. Peters, 142 La. 1012, 77 So. 948; Brown v. Saul, 4 Mart., N.S., 434.”
Neither of the two cases — Veasey v. Peters, decided in 1917 nor Brown v. Saul, decided in 1826, relied upon by the majority opinion are authority for the conclusion that a plea of unconstitutio'nality is synonymous to an exception of no right or cause of action. These cases are not apposite or even analogous, they are merely authority for the well recognized academic legal principle that an exception of no right or cause of action may be pleaded at any stage of the proceedings, even in the Supreme Court.
The conclusion of the majority opinion to the effect “that the plea (of unconstitutionality) is such a one as may be filed at any stage of a litigated matter, even on appeal” is completely refuted by the case of Causey v. Opelousas-St. Landry Securities Co., supra, in which the plaintiff, at the close of oral argument in the Supreme Court, filed a plea attacking the constitutionality of a statute and maintained that as the plea is intended as a peremptory exception founded on law, it may be pleaded at any stage of the action, even in the Supreme Court, previous to a definitive judgment. In support of this contention plaintiff cited Code of Practice Articles 346 and 902 and the cases of Veasey v. Peters, supra, and Black v. New Orleans R. & Light Co., 145 La. 180, 82 So. 81. The Court, after discussing these cited cases, stated that they were not authority for plaintiff’s contention and then held: “Neither Article 346 nor Article 902 of the Code of Practice, permitting the filing in this Court of any exception that may be filed at any period of the case when proof of the'exception appears by the mere examining of the record, authorises the filing, for the first time, in this Court, of a plea of unconstitutionality. That plea, whether it he urged by exception or by anszver, is in the nature of a special defense and must be specially pleaded.” [192 La. 677, 188 So. 742.]
It will also be noted that in the instant case there is no specific exception “of no right or cause of action” contained in the plea challenging the unconstitutionality of Act No. 23 of the Second Extra Session of 1950.
In State ex rel. Huggett v. Montgomery, 167 So. 147, decided by this Court, the syllabus reads: “Only constitutional objection to statute urged in exception of no cause of action filed in appellate court could be considered on appeal where constitutional objections were not raised in trial court.”
However, assuming arguendo that the majority opinion is correct in holding that this plea of unconstitutionality is synonymous to an exception of no right or cause of action and, as such, may be filed at any stage of a litigated matter, which is an assumption most favorable to the majority view; it is then my opinion that it was incumbent on this court to do one of two things: (I)- Maintain the ■ exception and declare Act No. 23 of the Second Extra Session of 1950 unconstitutional, or (2) dis-miss the exception or refer it to the effect and decide the case on the merits. However, the majority opinion lightly passes over this dilemma and directly into the throes of another dilemma by stating “even if it is clear that such a plea may be filed here, the question of our right to consider *448 it is challenged and, by. this challenge, there is presented a further interesting question of law. We first revert back to the well established rule that a plea of unconstitutionality not made in the nisi prius court may be considered on appeal. If not, what should be done with such a plea? Surely it cannot be said that it may be filed in this Court and yet it cannot be considered at all because it was not considered below. If, then, it may be filed here and cannot be considered by us, it seems that the only possible result is that it should be remanded in order that it may first be considered in the District Court.”
In view of the foregoing language it is obvious that the majority opinion comes to its conclusion without a solution of either dilemma which it has created, and merely consolidates the enigmas by stating that the matter should be remanded to the district court, which means that the court does indirectly what it could not do directly and the judgment of the district court is reversed without ever having been examined in the majority opinion.
In my opinion the only questions (based on the record) which this case posed for our consideration were: (1) Is the act in question constitutional, plaintiff having attacked its constitutionality on five distinct grounds in the district court, and, if so (2) does it give to the Criminal Sheriff the custody of the prisoners and not possession of the premises in which they are confined?
The answers to these two questions would have resulted in a logical and positive decision of this Court, either reversing or affirming the judgment as rendered by the lower court.
In conclusion, it may be that Act No. 551 of 1950, now an amendment to the Constitution of the State of Louisiana, may afford plaintiff an entirely new'cause of action which it may have pursued through the medium qf a new suit, and which may or may not have the ultimate result which plaintiff contends that it does have, — but certainly the special plea that Act No. 23 of the second Extra Session of 1950 is rendered unconstitutional by virtue of Act No. 551 of 1950, raised initially, or for the first time in this court, could not be considered -by this tribunal, — nor did the plea, per se, formulate a basis in law upon which to remand the matter to the District Court.
I respectfully dissent.